DISCIPLINARY COUNSEL *v.* LoDICO.

[Cite as *Disciplinary Counsel v. LoDico,*
106 Ohio St.3d 229, 2005-Ohio-4630.]

(No. 2004–2172—Submitted April 12, 2005—Decided September 21, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Steven L. LoDico of Canton, Ohio, Attorney Registration No. 0041715, was admitted to the practice of law in Ohio in 1989. Since that time, his primary professional focus has been criminal defense in Ohio's state courts.

{¶ 2} On March 16, 2004, relator, Disciplinary Counsel, filed an amended complaint with the Board of Commissioners on Grievances and Discipline, charging respondent with two counts of professional misconduct, which respondent answered. The charges arise from a grievance filed by five judges of the Stark County Court of Common Pleas, General Division. The grievance focused on separate incidents of conduct in criminal matters pending before two of the common pleas judges, Judge Sara Lioi and Judge Richard Reinbold. Both judges had found respondent in contempt for his pervasive and continuing pattern of misconduct in their courtrooms. The complaint thus charged that respondent "engaged in a course of conduct that was pervasive throughout the trial, wholly prejudicial to the administration of justice and disrespectful to the court and the profession."

Count I

{¶ 3} Count I alleged that respondent committed misconduct before Judge Lioi during a murder prosecution of three young defendants in September 2002.

Respondent's misconduct began even before the jury was impaneled, with inappropriate, loud, and rude statements that wrongly impugned the integrity of a prospective juror during voir dire. Respondent was cautioned about his conduct in the courtroom early in the trial proceedings. He repeatedly ignored admonishments about sanctions for continued violations of Judge Lioi's orders. Rather than curtailing his misconduct, however, respondent continued his behavior, at one point throwing money and credit cards on the bench in anticipation of a sanction and telling the judge, "[G]o ahead and fine me."

{¶ 4} Respondent continued to act in a cavalier, unprofessional manner thereafter. Disregarding Judge Lioi's orders, he spoke loudly at sidebars in an apparent effort to ensure that the jury heard his statements, including his suggestions that witnesses were lying. Despite repeated admonishments to obey her rulings, respondent continued to disregard Judge Lioi's orders. Some were minor, procedural orders concerning conduct during the trial: for example, questioning witnesses from across the courtroom and not from the lectern and making speaking objections. More significant, substantive misconduct involved evidentiary and other matters, such as ignoring the permissible scope of inquiry on testimony presented to the grand jury. He also made "dramatic" and inappropriate facial expressions in front of the jury as witnesses testified. Disciplinary Counsel quoted Judge Lioi's assessment of respondent's behavior as follows:

{¶ 5} "Counsel was so obstreperous during the trial that the Court was required * * * to conduct one of the sidebars in chambers. * * *

{¶ 6} * * * "[C]ounsel continuously talked loudly and inappropriately, ignored the Court's ruling by asking questions which the Court specifically instructed that counsel not ask; asked and re-asked questions after the Court instructed counsel to move on; again, argued with the Court regarding its rulings, made inappropriate and disrespectful comments during the trial and at sidebars, violated the Court's directive regarding the use of the Grand Jury transcript. * * * [He made] inappropriate and unprofessional facial and other physical reactions to the Court's rulings, [showed] disrespect to opposing counsel, * * * [talked while] the Court was talking after being asked to stop talking, and yelling at witnesses, asking questions in an inappropriate manner.

{¶ 7} * * * "[D]uring the questioning by co-counsel of a Defense witness counsel stood up and basically began testifying."

{¶ 8} Following trial, Judge Lioi held a hearing and cited respondent for contempt, imposing a five-day period of incarceration, a $2,000 fine, and court costs.

## Count II

{¶ 9} The second count of the complaint is based on respondent's appearance in late December 2003 before Judge Reinbold for a hearing and a pretrial conference in two criminal matters. The conduct at issue in those proceedings is set forth in the reversal on appeal of Judge Reinbold's summary contempt citation. See *In re LoDico*, Stark App. No. 2003–CA–00446, 2005-Ohio-172, 2005 WL 100953. In vacating the contempt citation and sentence, however, the court of appeals described respondent's comments and conduct as "unwise, insolent and probably personally insulting." Id. at ¶ 101.

{¶ 10} In the first instance, respondent made inappropriate, hostile, and slanderous comments before a pretrial hearing about witnesses who might testify. Judge Reinbold testified that respondent's behavior, cadence of speech, inability to focus, and rambling accusations against possible witnesses caused him concern.

{¶ 11} That behavior continued in the courtroom, where respondent exhibited erratic and aggressive behavior. Judge Reinbold said that he was required to raise his voice to an unacceptable level and demand that respondent immediately stop talking before trying to engage him in an inquiry about the representation of a defendant in the courtroom. During the ensuing exchange, respondent showed contempt through facial expressions and began to make inappropriate remarks to Judge Reinbold. Although some of those remarks were incorporated into a transcript, Judge Reinbold stated that the transcripts fail to accurately reflect the tone of respondent's speech, his physical bearing, and his rudeness.

{¶ 12} The insolence that Judge Reinbold perceived led to a contempt finding, accompanied by a 60–day jail term, of which respondent served 12 or 13 days before Judge Reinbold reduced the sentence.

## Disciplinary Proceedings

{¶ 13} The board appointed a panel, to which relator and respondent submitted agreed stipulations and exhibits, to consider the allegations of misconduct. In April 2004, the panel heard the testimony of respondent, Judge Lioi, Judge Reinbold, and several other witnesses. The hearing adjourned temporarily, and respondent was ordered to appear for psychiatric evaluation. See Gov.Bar R. V(7)(C).

{¶ 14} Respondent objected to the evaluative report filed by Dr. Robert W. Alcorn, a board-certified forensic psychiatrist selected by the panel. Dr. Alcorn concluded that respondent suffered from a delusional disorder of the persecutory type and a paranoid personality disorder that "substantially impairs" respondent's ability to practice law effectively. Respondent sought his own evaluation with Dr. Robert G. Kaplan, a clinical psychologist and board-certified forensic examiner. Dr. Kaplan offered a different conclusion: that respondent suffers

from an adjustment disorder mixed with anxiety and depressed mood that does not affect his ability to practice law. Both doctors testified before the panel in September 2004. Thereafter, the panel issued extensive findings of fact and conclusions of law, which the board adopted.

## Findings of Misconduct

{¶ 15} As to Count I, the board concluded that the record of the respondent's behavior before Judge Lioi was replete with instances of misconduct. Respondent consistently ignored the court's rulings on the admission of evidence and the scope of permissible examination of witnesses, spoke inappropriately and loudly throughout the trial, exhibited inappropriate and unprofessional facial and physical reactions, and behaved disrespectfully toward the court, the witnesses, and the jury. The board thus found respondent in violation of DR 1–102(A)(5) (barring conduct that is prejudicial to the administration of justice), 1–102(A)(6) (barring conduct that adversely reflects on the attorney's fitness to practice law), 7–106(A) (requiring compliance with a tribunal's rulings made in the course of a proceeding), and 7–106(C)(6) (barring undignified or discourteous conduct that degrades a tribunal).

{¶ 16} The board found that some instances of respondent's egregious behavior were calculated. For example, the board found that when respondent's cross-examination of a state's witness drew an objection from the assistant prosecutor, during the ensuing bench conference, respondent made a statement that "was designed simply so the jury could hear him call the witness a liar." The board concluded that such conduct was in violation of DR 7–106(C)(7), which proscribes the intentional or habitual violation of an established rule of procedure or evidence.

{¶ 17} As to Count II, the board concluded, "Respondent's behavior before Judge Reinbold was undignified and discourteous" and constituted inappropriate behavior. The board found that there was clear and convincing evidence that respondent had engaged in undignified and discourteous conduct degrading to a tribunal in violation of DR 7–106(C)(6). The board did not find, however, that respondent also had violated DR 1–102(A)(5) and 1–102(A)(6) as to Count II.

## Recommendation

{¶ 18} Having determined which violations of the code were established, the board considered aggravation, mitigation, and sanctions. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Factors found to be in aggravation of the misconduct were respondent's pattern of misconduct before Judge Lioi, his submission of false statements about a

conviction he received as a young Marine, and the lack of acknowledgement of any misconduct. See BCGD Proc.Reg. 10(B)(1)(c), (d), (f), and (g). In mitigation, the panel noted that despite prior contempt citations, respondent did not have a previous disciplinary record, was cooperative, had no dishonest or improper motive in the misconduct, and is of good reputation, particularly among his clients. See BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and (e).

{¶ 19} The panel recommended that respondent be suspended from the practice of law for 18 months, with the entire suspension stayed on various conditions, including respondent's diagnosis and treatment by a psychiatrist and the appointment of an attorney to monitor his practice. Noting that prior contempt citations had failed to cure respondent's contumacious conduct as evidenced by the "outrageous acts" in the instant cases, however, the board rejected the panel's recommended sanction. Instead, the board recommended a stay of 12 months of the 18–month suspension but adopted the panel's conditions for reinstatement to the practice of law.

## Review

{¶ 20} Respondent objects to the findings and conclusions of the board. He disputes the findings of misconduct, asserting that his behavior "subjectively consists of demonstrative body language and objectively consists of non-profane but persistent verbal language." He avers that in appearing before Judge Lioi and Judge Reinbold, he was not profane, disparaging, or disrespectful. Similarly, he contends that his conduct before Judge Reinbold was not improper. He suggests that Judge Reinbold's "antagonistic" demeanor and "confrontational," rather than ameliorative, attitude toward respondent during the hearings in question are important to understanding the events that occurred.

{¶ 21} In an apparent effort to explain how such supposedly innocuous conduct could give rise to the complaints at issue here, respondent suggests that the problems arise from the "divergent approaches" that Judge Lioi, Judge Reinbold, and he employ, particularly given the small confines of their legal community. He essentially argues that familiarity bred contempt.

{¶ 22} Respondent also states that his role as defense counsel must be considered in the assessment of his conduct. He argues that "defense of those accused of criminal activity is, by definition, a professional task imbued with not only a hard-bitten atmosphere, but also embraces highly individualized personal decisions which ultimately impact the accused's rights to life, liberty and/or property * * *. [This] practice lends itself to a passion and zeal not typically seen in other types of litigation, often accompanied by a sense of stubbornness and righteous indignation necessary to adequately prepare and present a defense for clients * * * *." He argues that this grievance implicates the unique

question of whether criminal defense counsel can be subjected to professional discipline for the conduct described.

{¶ 23} Having reviewed carefully the voluminous record in this case, including the transcripts of the disciplinary hearing and the trial proceedings at issue in the grievance, the parties' agreed stipulations, the reports prepared by the mental health professionals, and the submissions of the parties, we overrule respondent's objections and adopt the board's findings of fact and conclusions of law. We agree that respondent violated DR 1–102(A)(5), 1–102(A)(6), 7–106(A), 7–106(C)(6), and 7–106(C)(7) as found by the board.

{¶ 24} As the board correctly concluded, Judge Lioi expended an inordinate amount of time and energy managing respondent's repeated and often deliberate attempts to ignore her rulings and orders, to improperly influence the jury with references to information that was not admitted into evidence, and to engage in undignified or discourteous conduct with jurors, witnesses, and counsel. Respondent's pattern of misconduct in Judge Lioi's courtroom appears to have been an effort to create " 'an atmosphere of utter confusion and chaos, quoting the trial court's contempt charge.' " *Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 462, 91 S.Ct. 499, 27 L.Ed.2d 532. Rather than advancing the pursuit of justice, respondent advanced obstruction, obfuscation, and opprobrium.

{¶ 25} "Respect for and confidence in the judicial office are essential to the maintenance of any orderly system of justice." *In re Vincenti* (1983), 92 N.J. 591, 603, 458 A.2d 1268. The rule of law is based upon respect for the law; respect for the law entails respect for those who administer it. See *Attorney Grievance Comm. of Maryland v. Link* (2004), 380 Md. 405, 425, 844 A.2d 1197. Rather than reinforcing respect for the rule of law and confidence in its application, respondent repeatedly attempted to denigrate the rules and question their implementation by Judge Lioi. There can be no genuine doubt that such conduct was in violation of the rules cited.

{¶ 26} We further find that during his appearances before Judge Reinbold, respondent's behavior was undignified and discourteous and served to degrade the tribunal. Although such conduct did not rise to as egregious a level as did the conduct in Judge Lioi's courtroom, and although the board noted a "personality conflict" between respondent and Judge Reinbold, respondent's conduct was more than ample to establish a violation of the rule. Two men were charged with serious offenses; at least one faced imprisonment, and the other presented difficult and complex issues. Respondent's conduct in the courtroom was a disservice to each of them, as well as to Judge Reinbold.

{¶ 27} In finding that these violations occurred, we note that respondent's misconduct seems to be part of a much grander pattern. See, e.g., *In re LoDico* (June 26, 2000), Stark App. No. 1999CA00159, 2000 WL 873787. The pattern is

evidenced by the testimony of witnesses before the board as to other contempt findings and respondent's own suggestion that he has paid thousands of dollars in fines for contempt. Such a record is a mark of shame rather than a badge of honor. That respondent has not faced disciplinary action previously in no way mitigates the conduct, particularly in the absence of any acknowledgement of wrongdoing.

{¶ 28} Even when confronted with the false statements he had made regarding his history in the Marine Corps, respondent does not admit error. His misrepresentations about his experience as a Marine are certainly not dispositive in this case, but they are troubling in that they reinforce the questions about his mental health and the possibility that respondent reconstructs history to fit his end. Respondent's misstatements serve to weaken his credibility, even if they were good-faith mistakes rather than self-aggrandizing.

{¶ 29} Despite his failings, it is clear that respondent had no dishonest or selfish motive in the conduct at issue here—at least in the sense that the actions in question were part of an effort, albeit an improper one, to exonerate his clients. It seems beyond cavil that respondent's motivations are consistent with his belief in helping his clients. And despite whatever reservations members of the bar and bench may have about his representation, there is ample showing that respondent is of good reputation, well liked, and respected by his clients.

{¶ 30} In turning to the issue of sanctions, we are cognizant of respondent's service to criminal defendants and the intensely difficult nature of such work, which often presents tragic circumstances, visceral reactions, and great risks for the accused. Although criminal cases bring the responsibility and necessity of a vigorous defense, an attorney is not endowed with a concomitant right to denigrate the court in discharging that responsibility.

{¶ 31} The law demands that all counsel engender respect and dignity for the adjudication process. Though duty-bound to afford their clients the most competent representation of which they are capable, counsel are equally constrained by the mandates of integrity and professionalism imposed on all counsel as officers of the courts in which they appear. No proper defense or strategy warrants the type of misconduct exhibited by respondent.

{¶ 32} In our findings, we do not quantify the standards of civility that are imposed upon counsel or qualify the elusive boundary between zealous, aggressive advocacy and contemptuous, vituperative conduct. Nor do we reduce counsel to "obsequious sycophants in order to avoid offending the fragile sensibilities of judges." *Disciplinary Counsel v. Breiner* (1999), 89 Haw. 167, 173, 969 P.2d 1285. Rather, we "merely require that the members of [this] learned profession * * * act in accordance with the time-honored traditions that experience has taught us are necessary to protect the office of the court and the process

of justice from devolving into the barroom brawl." Id. We simply reinforce the mandate that our attorneys advocate within the rules of law, in the light of rational thought and reason rather than innuendo and incivility. Counsel must recognize that in every trial, the integrity of the process is as much at stake as are the interests of the accused. See *Mayberry*, 400 U.S. at 468, 91 S.Ct. 499, 27 L.Ed.2d 532 (Burger, C.J., concurring). Justice must always appear just. Id. at 465, 91 S.Ct. 499, 27 L.Ed.2d 532.

{¶ 33} Accordingly, we agree not only with the board's finding that respondent has committed the violations charged, but also with its recommendation that a substantial sanction be imposed for the misconduct. Having considered the recommendations of the panel and the board, we think that a more significant sanction is warranted. Respondent is therefore suspended from the practice of law in Ohio for 18 months; however, the last 6 months of the suspension are stayed under the following conditions:

{¶ 34} (1) Respondent shall permit relator to appoint an attorney to monitor his practice during the stayed portion of the suspension.

{¶ 35} (2) Respondent must seek and obtain treatment from a psychiatrist of his own selection, provided that the psychiatrist selected (a) is provided with the reports of Dr. Alcorn and Dr. Kaplan, (b) is approved by relator, (c) is certified by the American Board of Psychiatry and Neurology, (d) reports a diagnosis and a treatment plan to relator, and (e) thereafter reports to relator at least once every 90 days on respondent's progress and compliance.

{¶ 36} (3) Respondent must bear the costs of psychiatric evaluation and treatment.

{¶ 37} If respondent violates the conditions of the stay, the stay will be lifted, and respondent shall serve the entire 18–month suspension. Further, in addition to the requirements of Gov.Bar R. V(10), respondent shall, upon any application for reinstatement, provide a report from the psychiatrist that respondent is able to return to the competent, ethical, and professional practice of law. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Koblentz & Koblentz, Richard S. Koblentz, and Craig J. Morice, for respondent.