AKRON BAR ASSOCIATION *v.* MARKOVICH.

[Cite as *Akron Bar Assn. v. Markovich,*
117 Ohio St.3d 313, 2008-Ohio-862.]

(No. 2007–1593—Submitted October 9, 2007—Decided March 6, 2008.)

**Per Curiam.**

{¶ 1} Respondent, Edward P. Markovich of Akron, Ohio, Attorney Registration No. 0068046, has been admitted to the practice of law in Ohio since 1997.

{¶ 2} The Board of Commissioners on Grievances and Discipline has recommended that we suspend respondent's license to practice for one year, staying the last six months of the suspension on conditions, based on findings that he violated the Code of Professional Responsibility. On review, we agree with the board that respondent committed professional misconduct by, among other infractions, neglecting two clients' cases, helping a client violate a civil protection order, filing an unapproved dismissal entry, borrowing money from a client, and misusing his client trust account. We also accept the board's recommendation.

{¶ 3} Relator, Akron Bar Association, charged respondent with violations of the Disciplinary Rules in seven different cases. A panel of the board heard the matter, including the parties' comprehensive stipulations, and then made findings of fact and conclusions of law and recommended the one-year suspension with six months conditionally stayed. The board adopted the panel's findings of misconduct and recommendation.

## Misconduct

### *The Peyton Case*

{¶ 4} In May 2004, respondent agreed to help Jearlene Peyton administer her husband's estate, which included real estate located in Summit County, Ohio. After respondent opened the estate, the Summit County Probate Court notified him that additional filings were due. Respondent misfiled the necessary paperwork, and the probate court issued a show-cause order against his client.

{¶ 5} Peyton learned that respondent had not complied with the probate court's order when she contacted the probate court. She discharged respondent and

filed a grievance with relator. Respondent offered to refund a $200 filing fee if Peyton would drop the grievance.

{¶ 6} Consistent with the stipulations, the board found that respondent had neglected his client and had attempted to avoid responsibility for this misconduct. We adopt this finding and agree that respondent thereby violated DR 6–101(A)(3) (a lawyer shall not neglect an entrusted legal matter) and 6–102 (a lawyer shall not attempt to exonerate himself or limit his liability to a client for personal malpractice).

## The Unapproved Dismissal Entry

{¶ 7} While representing a plaintiff in federal court, respondent obtained opposing counsel's permission for a voluntary dismissal of the complaint without prejudice under Fed.R.Civ.P. 41(A), with the provision that respondent dismiss allegations against one of the defendants with prejudice and at plaintiff's cost. In preparing the entry, however, respondent wrongly represented that the allegations against the defendant had been dismissed with prejudice previously. He also did not specify that the voluntary dismissal was at the plaintiff's cost.

{¶ 8} Respondent eventually corrected the dismissal entry with prompting from opposing counsel, but not for more than a year.

{¶ 9} Consistent with the stipulations, the board found that respondent had misled the court and opposing counsel in filing the unapproved dismissal order. We adopt this finding and agree that respondent thereby violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving misrepresentation), 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), and 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law).

## The Civil Protection Order

{¶ 10} In July 2005, respondent represented a client against whom a civil protection order ("CPO") had been issued. Respondent had received notice of the order, which required his client to remain at least 500 feet from a woman and others named in the order and forbade the client from initiating contact with them, "their residences, * * * or babysitters." The order forbade contact through any means, including "through another person."

{¶ 11} Approximately five months later, respondent went to the woman's residence with his client. Respondent's client remained in his car, and respondent approached the front door to confront a babysitter inside. According to the stipulations, "Markovich knew that [the children's mother] was not home and he intended to intimidate the babysitter to gain an advantage for his client. Marko-

vich had, prior to the encounter, looked inside of the front door and/or window of the residence."

{¶ 12} Consistent with the stipulations, the board found that respondent had violated the CPO by appearing at the woman's house with his client and speaking with the babysitter. We adopt this finding and agree that he thereby violated DR 1–102(A)(5) and 1–102(A)(6).

### The McCloskey Case

{¶ 13} Irene McCloskey retained respondent to represent her in a guardianship case and paid him a flat fee of $1,000, which included a filing fee. For approximately six months, respondent filed nothing in court and failed to respond to McCloskey's inquiries about his progress. Eventually, McCloskey filed the necessary paperwork herself, paying the $240 filing fee. Respondent wrote a letter to a judge about the case, but contrary to his client's expectations, did not file anything. Respondent later refunded his client's $1,000.

{¶ 14} Consistent with the stipulations, the board found that respondent had abandoned his client's case. We adopt this finding and agree that respondent thereby violated DR 6–101(A)(3).

### The Maggio Case

{¶ 15} Respondent retained $15,000 as a loan from Paula Maggio, his client and sister-in-law at the time, after obtaining that amount in settlement of a personal-injury claim. Consistent with the stipulations, the board found that respondent had impermissibly transacted business with a client without disclosing the attendant risks and obtaining her consent. We adopt this finding and agree that respondent thereby violated DR 5–104(A) (a lawyer shall not enter into a business transaction with a client unless the client has consented after full disclosure).

### The Client Trust Account

{¶ 16} Respondent improperly used his client trust account by paying his administrative assistant with client funds. The board found that respondent had impermissibly commingled his personal funds with entrusted client funds. We adopt this finding and agree that respondent thereby violated DR 9–102(A) (a lawyer shall deposit client funds, other than advances for costs and expenses, in a separate identifiable bank account).

### Misconduct During Court Proceedings

{¶ 17} In March 2005, respondent defended a client against criminal charges in Wayne County Common Pleas Court. According to the stipulations, respondent "was continually disruptive, ignored court rulings, was inappropriate in his

questioning, and discourteous to the Court and opposing counsel" during those proceedings. The presiding judge cited respondent for contempt, and another judge sentenced him to ten days in jail, suspending the sentence on the conditions that respondent perform community service, pay a fine, obtain remedial continuing legal education, and apologize to the presiding judge. When respondent failed to perform the community service, the second judge put him in jail for two days.

{¶ 18} Consistent with the stipulations, the board found that respondent had refused to properly question witnesses, to interact with opposing counsel professionally, and to obey court rulings. We adopt this finding and agree that respondent thereby violated DR 1–102(A)(5), 1–102(A)(6), 7–106(C)(2) (a lawyer shall not ask any question that is intended to degrade a witness), and 7–106(C)(4) (a lawyer shall not assert his personal opinion as to the credibility of a witness).

### Sanction

{¶ 19} In determining the appropriate sanction to impose for attorney misconduct, "we consider the duties violated, the actual or potential injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases." *Stark Cty. Bar Assn. v. Ake,* 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206, ¶ 44. We weigh the aggravating and mitigating factors to decide whether circumstances warrant a more lenient or exacting disposition. See Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Because each disciplinary case involves unique facts and circumstances, we are not limited to the factors specified in the rule and may take into account "all relevant factors" in determining which sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 20} We have already discussed how respondent violated duties owed to his clients, the public, and the judicial system, and his concessions support that he did so knowingly. This court does not tolerate lawyers who neglect the interests of their clients or commingle funds. *Toledo Bar Assn. v. Peters* (1999), 87 Ohio St.3d 348, 349–350, 721 N.E.2d 26 (attorney's neglect of entrusted legal matter and commingling of client funds and personal funds warranted 18–month suspension from practice of law, with final 12 months stayed on the condition that attorney submit to monitoring program). Equally intolerable are lawyers who fail to advocate at trial within the rules of law and to act with civility and professionalism. *Disciplinary Counsel v. LoDico,* 106 Ohio St.3d 229, 2005-Ohio-4630, 833 N.E.2d 1235, ¶ 26, 35 (attorney's repeated acts of defiance during court proceedings and his citations for contempt warranted an 18–month suspension, with the last six months stayed, and probation to include a psychological examination upon reinstatement).

{¶ 21} The board found one aggravating factor—that respondent had committed multiple offenses. BCGD Proc.Reg. 10(B)(1)(d). As mitigating factors, the board found that respondent had no previous disciplinary record, see BCGD Proc.Reg. 10(B)(2)(a), and had made restitution, see BCGD Proc.Reg. 10(B)(2)(c). Respondent also submitted recommendations as to his good character and reputation apart from the underlying misconduct. See BCGD Proc.Reg. 10(B)(2)(e). We also accept these findings, which weigh in favor of leniency, and further find that respondent acknowledged the wrongfulness of his conduct and expressed genuine remorse.

{¶ 22} As the board concluded, however, respondent's practice is in dire need of rehabilitative oversight. His failures to attend to his clients, defiance of court orders, and sometimes outrageous courtroom behavior, coupled with his misuse of his trust account and other improprieties, demand a period of actual suspension and subsequent monitoring to protect the public. Respondent seems to accept this assessment, having stipulated to all the cited disciplinary violations and forgone any objection to the board's recommended sanction.

{¶ 23} We therefore suspend respondent from the practice of law in Ohio for one year. Six months of the suspension are stayed on the conditions that respondent complete an 18–month monitored probation in accordance with Gov. Bar R. V(9) upon reinstatement and commit no further misconduct during the probation. If respondent fails to comply with the conditions of the stay or probation, the stay will be lifted, and respondent shall serve the entire one-year suspension. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., and O'CONNOR, J., dissent.

—————

**MOYER, C.J., dissenting.**

{¶ 24} I respectfully dissent from the majority opinion with respect to the sanction imposed on respondent. The board recommended that respondent be suspended from the practice of law for one year and that the last six months of the suspension be stayed on conditions. While the majority has concluded that the board's recommendation was appropriate, I disagree and would impose a stricter sanction on respondent.

{¶ 25} In total, respondent was charged with 13 violations of the Disciplinary Rules in seven different cases. Respondent's instances of misconduct were varied, frequent, and offensive to the profession and the public we serve. In the ten years that he has been admitted to the practice of law in Ohio, respondent has

engaged in a pattern of misconduct. Respondent stipulated to the following violations:

{¶ 26} • Misfiling necessary paperwork in a probate case, resulting in a show-cause order against his client, to which he did not respond;

{¶ 27} • Attempting to limit his liability for his misconduct by offering to refund money to his client in exchange for her dismissing her grievance complaint;

{¶ 28} • Misrepresenting an opposing party's agreement in a voluntary-dismissal entry to the court and then taking more than a year to correct the entry;

{¶ 29} • Violating a civil protection order, intending to intimidate a person to gain an advantage for his client;

{¶ 30} • Neglecting his client in a guardianship case by failing to file documents in court and to respond to her inquiries, requiring his client to finally file the necessary documents herself;

{¶ 31} • Retaining a $15,000 loan from his client, who was also his sister-in-law, without gaining her fully informed consent;

{¶ 32} • Commingling his personal funds with entrusted client funds; and

{¶ 33} • Improperly questioning witnesses, disobeying court rulings, and failing to interact with opposing counsel professionally, resulting in a citation for contempt from a judge of a common pleas court.

{¶ 34} Respondent's misconduct was extensive: he has repeatedly violated his duties to the legal profession, the public, and the courts. Therefore, respondent's misconduct warrants a stronger sanction. I would suspend respondent from the practice of law for one year, with no time stayed.

O'CONNOR, J., concurs in the foregoing opinion.

––––––––––

William G. Chris and Alison J. Pfeister, for relator.

Edward P. Markovich, pro se.