AKRON BAR ASSOCIATION *v.* WITTBROD.

[Cite as *Akron Bar Assn. v. Wittbrod,* **122 Ohio St.3d 394, 2009-Ohio-3549.**]

*Attorneys at law — Disciplinary violations — Stayed license suspension.*

(No. 2008-0723 — Submitted April 8, 2009 — Decided July 28, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-021.

————————————

**Per Curiam**.

{¶ 1} Respondent, Harry J. Wittbrod of Cuyahoga Falls, Ohio, Attorney Registration No. 0066021, was admitted to the practice of law in Ohio in 1996.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for six months but stay the suspension on conditions requiring him to continue with mental-health treatment, complete a one-year monitored probation, and receive training in law-office management. The recommendation is based on the board's findings that respondent violated ethical standards by failing to advise a client that he lacked professional malpractice insurance and by attempting to exonerate himself from or limit his liability for malpractice. We agree that respondent engaged in this professional misconduct and that a six-month conditionally stayed suspension of his license is appropriate.

{¶ 3} Relator, Akron Bar Association, charged respondent in a six-count complaint with violations of the Disciplinary Rules of the former Code of Professional Responsibility and the current Rules of Professional Conduct.[1] The

————————————

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility.

board initially considered the case on a consent-to-discipline agreement, filed pursuant to Section 11 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). In that agreement, the parties stipulated to facts and misconduct and proposed a one-year suspension of respondent's license, stayed on conditions of mental-health treatment and monitored probation. The board accepted the agreement and recommended that we order a one-year suspension, all stayed on the agreed-upon conditions.

{¶ 4} Upon review of the board's certified report, we rejected the recommendation and returned the cause to the board "for further proceedings, including consideration of a more severe sanction." See *Akron Bar Assn. v. Wittbrod*, 118 Ohio St.3d 1405, 2008-Ohio-2411, 886 N.E.2d 869. A panel of three board members heard the case and found that respondent had committed misconduct as charged in Counts III and IV but not in connection with the other four counts. Having found fewer ethical infractions than those to which the parties had stipulated initially, the panel recommended a six-month suspension stayed on conditions requiring respondent to continue mental-health treatment, complete a one-year monitored probation, and receive training in law-office management. The board adopted the panel's findings of misconduct and recommendation.

{¶ 5} Neither party has objected to the board's report.

**Misconduct**

{¶ 6} Count III of relator's amended complaint alleged that respondent violated DR 1-104(A) and (B) by failing to provide and then document that he had given notice to a client that he did not maintain professional liability insurance "in the amounts of at least one hundred thousand dollars per occurrence and three hundred thousand dollars in the aggregate." Count IV alleged a violation of DR 6-102, which with an exception not relevant here prohibited a

lawyer from attempting to exonerate himself from or limit his liability to a client for malpractice. Count IV further alleged a violation of Prof.Cond.R. 1.8(h)(2), which prohibits a lawyer from settling a claim for malpractice unless all of the following apply:

**{¶ 7}** "(i) the settlement is not unconscionable, inequitable, or unfair;

**{¶ 8}** "(ii) the client or former client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith;

**{¶ 9}** "(iii) the client or former client gives informed consent."

### Count III

**{¶ 10}** During 2005 and 2006, respondent defended a client against an employee's workers' compensation claim. Respondent did not advise the client that he lacked malpractice insurance as required by DR 1-104(A) and (B). We therefore find clear and convincing evidence of this misconduct.

### Count IV

**{¶ 11}** After the Industrial Commission allowed the employee's claim for disability compensation, making respondent's client responsible for payment, respondent miscalculated and missed a filing deadline for appealing the decision. In November 2006, the client sued respondent for malpractice, and in May 2007, respondent settled with the client for approximately $11,000, although he has since defaulted on installment payments due. Respondent conceded that at some point during settlement negotiations in the malpractice case, either before or after the February 1, 2007 effective date of the Code of Professional Conduct, he proposed as a term of settlement the dismissal of the client's grievance.

**{¶ 12}** As the panel and board observed, DR 6-102 did not specifically prohibit a lawyer from negotiating with a client for the dismissal of a grievance pending before disciplinary authorities. The rule instead focused on the prohibition against a lawyer's negotiating with a client to limit malpractice

liability without necessary safeguards, now set forth in Prof.Cond.R. 1.8(h)(2)(i) through (iii), to avoid the risks associated with their adversarial interests. *Disciplinary Counsel v. Clavner* (1977), 77 Ohio St.3d 431, 432, 674 N.E.2d 1369.

{¶ 13} Even so, we recently accepted a stipulation to a violation of DR 6-102, the former counterpart of Prof.Cond.R. 1.8(h)(2), based on a lawyer's attempt to obtain the dismissal of a pending grievance through negotiations with an unrepresented client. In *Akron Bar Assn. v. Markovich*, 117 Ohio St.3d 313, 2008-Ohio-862, 883 N.E.2d 1046, ¶ 5-6, the parties stipulated to the DR 6-102 violation, citing the lawyer's offer to repay a $200 filing fee in return for the client's dismissal of a then pending grievance. Apparently, the stipulation resulted not only because the client was unrepresented but because the disciplinary investigation in process might have led to a malpractice claim. In any event, the parties did not dispute the violation, and neither has respondent in this case. We therefore accept the panel and board findings that respondent violated DR 6-102 or Prof.Cond.R. 1.8(h)(2).[2]

### Sanction

{¶ 14} Having found the cited misconduct, the panel and board weighed the aggravating and mitigating factors in respondent's case in recommending a sanction and documented the following:

{¶ 15} "Respondent has no history of disciplinary violations. There was no evidence of dishonesty or selfish motive or multiple offenses. Respondent has returned the $200 filing fee [for the appeal] to the client. The only other fees for the workers' compensation case totaled $500. No restitution is required. Any

---

2. *Cleveland Bar Assn. v. Kates* (1997), 78 Ohio St.3d 69, 70-71, 676 N.E.2d 512, observed that "[d]isciplinary proceedings are not actions for malpractice," however, and suggested that a lawyer's attempt to derail a disciplinary investigation through negotiations to dismiss a grievance was more aptly charged as a violation of DR 1-102(A)(2) (prohibiting a lawyer from circumventing a Disciplinary Rule through the actions of another).

harm to the client has been rectified by the judgment, through a settlement agreement, for his malpractice claim. Respondent's default on the installment payments can be addressed through other enforcement or collection proceedings, not through this Board.

{¶ 16} "Respondent displayed significant emotions at the hearing. He has given up practicing law. He described symptoms of depression and anxiety, including treatment dating back to 2002 by his family physician who prescribed antianxiety medications. On the day before the hearing, he met with OLAP [the Ohio Lawyers Assistance Program] and signed a contract relating to mental health issues. He has been directed to see a psychiatrist and a new psychologist. Shortly before the hearing, his attorney and others essentially staged an intervention at Respondent's home office, to review his remaining active client files.

{¶ 17} "Respondent presented no medical evidence regarding his mental health. Further, he does not relate his mistake in missing the appeal deadline to his mental health. He said that he has developed a 'fear of clients, a distrust of clients' over the past two years and that his emotional symptoms 'started to build, especially after (the underlying client dispute).' Based on Respondent's testimony, the malpractice action (filed by an attorney who 'had actually sued [him] previously' and had 'literally shaken [him] emotionally') was a tipping point in causing an exacerbation of his mental health symptoms and causing him, essentially, to shut down and withdraw.

{¶ 18} "After an initial delay in responding to Relator's letters, Respondent has cooperated throughout this disciplinary matter."

{¶ 19} Relator proposed a two-year suspension with a one-year stay on conditions, including respondent's compliance with his OLAP contract, completion of a one-year monitored probation, and completion of training in law-office management in addition to the continuing legal education requirements of

Gov.Bar R. X. Respondent asked only for a conditional stay of any suspension imposed. The panel and board concluded:

{¶ 20} "The violations established by this record do not justify an actual suspension. But for Respondent's acknowledged and unresolved mental health issues, this record would otherwise justify only a public reprimand. However, for protection of the public and to permit Respondent the opportunity to address his issues through OLAP and appropriate medical providers, the panel recommends the sanction of a six month suspension, all stayed on the conditions that Respondent comply with the conditions of his OLAP contract, including any recommendations for medical treatment made by OLAP; that Respondent attend one or more CLE courses on law-office management; and that, should he resume the practice of law, his practice be monitored for one year by an attorney appointed by Relator."

{¶ 21} We accept this recommendation. Respondent is suspended from the practice of law in Ohio for six months, but the suspension is stayed on the conditions that he comply with the conditions of his OLAP contract, including any recommendations for medical treatment made by OLAP, that he attend one or more CLE courses on law-office management, and that his practice be monitored for one year by an attorney appointed by relator. If respondent fails to comply with the terms of the stay, the stay will be lifted, and respondent will serve the entire six-month suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Joseph S. Kodish and Kathryn A. Belfance, for relator.

Mathew W. Oby, for respondent.

_____