[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Brockler,* Slip Opinion No. 2016-Ohio-657.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-657

DISCIPLINARY COUNSEL *v.* BROCKLER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Brockler,* Slip Opinion No. 2016-Ohio-657.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—One-year suspension, stayed on conditions.*

(No. 2015-0280—Submitted May 6, 2015—Decided February 25, 2015.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-030.

_____

**Per Curiam.**

{¶ 1} Respondent, Aaron James Brockler of Lakewood, Ohio, Attorney Registration No. 0078205, was admitted to the practice of law in Ohio in 2004.  In an April 7, 2014 complaint, relator, disciplinary counsel, charged Brockler with engaging in professional misconduct while he served as the assistant Cuyahoga County prosecutor assigned to a murder case.  Specifically, relator alleged that

while investigating the shooting death of Kenneth "Blue" Adams, Brockler created a fictitious Facebook account and used it to contact the alibi witnesses of Damon Dunn, who had been indicted for the murder.

{¶ 2} The parties entered into stipulations of fact and submitted 15 stipulated exhibits. After a two-day hearing, a panel of the Board of Professional Conduct issued a report finding that Brockler's use of the fictitious Facebook account to contact the alibi witnesses involved dishonesty, fraud, deceit, or misrepresentation, and that it prejudiced the administration of justice. It recommended, however, that we dismiss an alleged violation arising from certain statements that Brockler made to the media.

{¶ 3} Citing substantial mitigating evidence and finding that Brockler's misconduct was an isolated incident in an otherwise notable legal career, the panel recommended that he be suspended for one year, fully stayed on conditions. The board adopted the panel's report in its entirety, and neither party has filed objections. We adopt the board's findings of fact and conclusions of law and suspend Brockler from the practice of law in Ohio for one year, fully stayed on conditions.

## Misconduct

{¶ 4} Before he was indicted, Dunn denied any involvement in Adams's death and told Cleveland police that at the time of the murder, he was with his girlfriend, Sarah Mossor, and her friend Marquita Lewis. Brockler did not believe Dunn's alibi was true, but Mossor and Lewis refused to talk with him on numerous occasions when he identified himself as the assistant prosecutor assigned to the case.

{¶ 5} As part of his investigation, Brockler listened to recordings of telephone calls that Dunn had made from the Cuyahoga County Jail. On the morning of December 14, 2012, he listened to a recording of a heated conversation in which Dunn and Mossor argued over Dunn's fear that Mossor would not be a

reliable witness and Mossor's belief that Dunn had not been faithful to her. Mossor suspected that Dunn had had a romantic relationship with a woman named "Taisha" and indicated that if her suspicion was true, she would end her relationship with Dunn. Believing that Mossor's relationship with Dunn was near a breaking point, Brockler saw an opportunity to exploit her feelings of distrust and get her to recant her support for Dunn.

{¶ 6} Recalling a Facebook ruse he had used in a prior case, Brockler planned to create a fictitious Facebook identity to contact Mossor. He attempted to obtain assistance from several Cleveland police detectives and the chief investigator in the prosecutor's office, but they were not available. Believing that time was of the essence, Brockler decided to proceed with the Facebook ruse on his own approximately one hour after he heard the recording of Mossor and Dunn's conversation. He created a Facebook account using the pseudonym "Taisha Little," a photograph of an African-American female that he downloaded from the Internet, and information that he gleaned from Dunn's jailhouse telephone calls. He also added pictures, group affiliations, and "friends" he selected based on Dunn's telephone calls and Facebook page.

{¶ 7} Posing as Little, Brockler simultaneously contacted Mossor and Lewis in separate Facebook chats. He falsely represented that Little had been involved with Dunn, that she had an 18-month-old child with him, and that she needed him to be released from jail so that he could provide child support. He also discussed Dunn's alibi as though it were false in an attempt to get Mossor and Lewis to admit that they were lying for Dunn (or would lie for him in the future) and to convince them to speak with the prosecutor.

{¶ 8} After chatting for several hours, Brockler sensed that Mossor and Lewis were suspicious, so he shut down the chat and deleted the fictitious account. He testified that he printed copies of the chats and placed them in a file—with the intent to provide copies to defense counsel—before he deleted the account, but

those copies were never found.  He attended five pretrial conferences from January through April 2013 but did not disclose the circumstances or content of his conversations with Mossor or Lewis.

{¶ 9} Brockler was scheduled to take an extended medical leave beginning April 16, 2013, and assistant prosecutor Kevin Filiatraut was assigned to handle the Dunn case in his absence.  Brockler gave his file to Filiatraut, reviewed the case with him, and attended a pretrial conference with him.  Brockler also disclosed that he might need to be a witness at trial because both Mossor and Lewis had told him they would not support Dunn's alibi, although they were afraid to say so in court. Brockler did not disclose *how* he obtained that information.

{¶ 10} On the second day of Brockler's leave and less than one week before Dunn's trial, a police detective gave Filiatraut several documents, including a transcript of Lewis's chat with "Taisha Little" (obtained from Lewis) and Lewis's written statement about the chat.  Filiatraut immediately made the documents available to defense counsel and began to investigate Little.

{¶ 11} Although Filiatraut quickly informed Brockler about this new information, Brockler waited nearly three weeks to disclose that he was "Taisha Little."  Upon learning of Brockler's ruse, Filiatraut reported this information to his superiors.  The prosecutor's office withdrew from the case and the court appointed the attorney general to serve as a special prosecutor.  Shortly after Brockler returned from his medical leave in June 2013, his employment was terminated.

{¶ 12} Soon thereafter, Brockler spoke with reporters from the Cleveland *Plain Dealer* and a local television affiliate in response to Cuyahoga County Prosecuting Attorney Timothy McGinty's statements that Brockler was fired for his unethical conduct in creating false evidence, lying to witnesses and another prosecutor, and damaging the prosecution's chances in a murder case in which an innocent man was killed at work.

**{¶ 13}** The subsequently published article and broadcasted interview included statements by Brockler—which he does not dispute—to the effect that (1) prosecutors have long engaged in ruses to obtain the truth, (2) his firing was an overreaction because he only did what the police should have done, (3) he engaged in an investigative ruse to uncover the truth and keep a murderer behind bars, (4) the public was better off because of his actions, (5) if he had not taken these actions, a murderer might be walking the streets, (6) he promised the victim's mother that he would not let a horrible killer walk out of the courthouse to kill someone else, and (7) McGinty chose to follow the technical rules of ethics, while he chose to protect the public.

**{¶ 14}** Approximately one year after Brockler's termination, Dunn was convicted of aggravated murder, murder, felonious assault, and having weapons while under disability. The parties stipulated in January 2015 that his conviction was on appeal, but it has since been affirmed, *see State v. Dunn*, 8th Dist. Cuyahoga No. CR-12-568849-A, 2015-Ohio-3138.

**{¶ 15}** Brockler admitted that the Facebook ruse violated the plain language of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), but he urged the board to carve out an exception for "prosecutorial investigation deception."

**{¶ 16}** Noting that a comment to Prof.Cond.R. 8.4 already recognizes an exception for lawyers who supervise or advise nonlawyers about lawful covert investigative activities, and that this court has found in two cases that lawyers in private practice violated the analogous provisions of DR 1-102(A)(4) by personally engaging in investigatory deceptions, the board refused to carve out a broader exception to the rule. *See* Prof.Cond.R. 8.4, Comment 2A; *Columbus Bar Assn. v. King*, 84 Ohio St.3d 174, 702 N.E.2d 862 (1998) (finding that two attorneys engaged in dishonest conduct by conspiring for one of them to place a phone call while posing as someone else in order to generate evidence in furtherance of a

client's case); *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 17 (finding that an attorney engaged in dishonesty, fraud, deceit, or misrepresentation when she intimidated a deposition witness by creating the false impression that she possessed compromising personal information that could be offered as evidence).

**{¶ 17}** Instead, the board found that Prof.Cond.R. 8.4(c) requires an assistant prosecutor to refrain from dishonesty, fraud, deceit, or misrepresentation when personally engaging in investigatory activity and that Brockler's Facebook ruse therefore violated the rule.

**{¶ 18}** Brockler argued that his conduct did not violate Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) as charged in the complaint because it encouraged witnesses to come forward and tell the truth. But the board found that his subterfuge prejudiced the administration of justice because it had the potential to induce false testimony, injected significant new issues into the case shortly before trial, and materially delayed the resolution of the case by requiring further investigation and the appointment of a special prosecutor.

**{¶ 19}** Relator's complaint also alleged that Brockler's statements to the media violated Prof.Cond.R. 3.6(a) (prohibiting a lawyer who has participated in the investigation or litigation of a matter from making extrajudicial statements that he knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter). While the board did not condone Brockler's statements, it found that relator failed to carry his burden of proving not only that the statements were made but that Brockler knew or reasonably should have known that his statements would have a substantial likelihood of materially prejudicing Dunn's trial. Therefore, the board recommended that we dismiss the alleged violation of Prof.Cond.R. 3.6(a).

**Sanction**

{¶ 20} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Gov.Bar R. V(13).

{¶ 21} As an aggravating factor, the board found that Brockler's deceptions and misrepresentations in his contacts with Mossor and Lewis resulted in multiple violations of Prof.Cond.R. 8.4(c) and (d), though it treated them as a single instance of misconduct. *See* Gov.Bar R. V(13)(B)(4). The board also found that his extrajudicial statements to the media, deflecting blame for his own misconduct to the police department and the prosecutor's office, undermined the public's confidence in the criminal-justice process. *See* Gov.Bar R. V(13)(A) (requiring the board to consider all relevant factors in determining the appropriate sanction for a lawyer's misconduct).

{¶ 22} In mitigation, the board found that Brockler did not have a prior disciplinary record, made a full and free disclosure and cooperated in the disciplinary process, submitted numerous letters attesting to his good character and reputation for honesty, and acknowledged that the loss of his "dream job" was a form of penalty. *See* Gov.Bar R. V(13)(C)(1), (4), (5), (6). Although Brockler's use of deception violated core ethical values, the board also found he was not motivated by self-interest, because he honestly—albeit erroneously—believed that his covert use of Facebook was an effective and acceptable tactic akin to more traditional investigative tactics such as staged drug buys and the use of undercover informants. *See* Gov.Bar R. V(13)(C)(2).

{¶ 23} Despite advocating for a public-policy exception for deceptive prosecutorial investigation tactics, Brockler admitted that his conduct violated the

plain language of Prof.Cond.R. 8.4(c) and argued for no more than a stayed six-month suspension. Relator, in contrast, argued that Brockler should serve an actual suspension from the practice of law, though he did not suggest any specific duration.

{¶ 24} The board acknowledged that misconduct involving dishonesty, fraud, deceit, or misrepresentation generally warrants an actual suspension from the practice of law. *See, e.g.*, *Disciplinary Counsel v. Karris*, 129 Ohio St.3d 499, 2011-Ohio-4243, 954 N.E.2d 118, ¶ 16; *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus.

{¶ 25} But the board also recognized that we may deviate from that rule in the presence of significant mitigating evidence. *See Disciplinary Counsel v. Potter*, 126 Ohio St.3d 50, 2010-Ohio-2521, 930 N.E.2d 307 (absence of a prior disciplinary record, efforts to rectify the consequences of the misconduct, full cooperation in the investigation, self-reporting, and evidence of good character and reputation apart from the charged misconduct sufficient to stay 12-month suspension for violating fiduciary duty as the executor of an estate); *Disciplinary Counsel v. Niermeyer*, 119 Ohio St.3d 99, 2008-Ohio-3824, 892 N.E.2d 434, ¶ 12-13 (absence of prior misconduct, self-reporting, cooperation in the disciplinary process, acceptance of responsibility for misconduct, and evidence of good character and reputation sufficient to stay 12-month suspension for altering a document to make it appear that it had been timely filed). *See also King*, 84 Ohio St.3d 174, 702 N.E.2d 862 (imposing a fully stayed one-year suspension based upon the presence of significant mitigating evidence); *Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117 (imposing a fully stayed six-month suspension based upon the presence of significant mitigating evidence).

{¶ 26} Noting the substantial mitigating factors present in this case—including the board's finding that the misconduct was an isolated incident in an otherwise notable legal career—the board recommends that we suspend Brockler

for one year, fully stayed on the conditions that he engage in no further misconduct and that he pay the costs of this action.

{¶ 27} Having determined that the board's findings of fact and conclusions of law are supported by the record and the law, we adopt the board's report, find that Brockler's use of a deceptive investigative technique to contact Dunn's alibi witnesses violated Prof.Cond.R. 8.4(c) and (d), and dismiss the alleged violation of Prof.Cond.R. 3.6(a).  We also find that a one-year suspension, fully stayed on the conditions recommended by the board, is the appropriate sanction for Brockler's misconduct.

{¶ 28} Accordingly, Aaron James Brockler is suspended from the practice of law in Ohio for one year, fully stayed on the conditions that he engage in no further misconduct and pay the costs of this proceeding.  If he fails to comply with the conditions of the stay, the stay will be lifted, and he shall serve the full one-year suspension.  Costs are taxed to Brockler.

Judgment accordingly.

PFEIFER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., dissents with an opinion in which LANZINGER, J., joins.

O'DONNELL, J., dissents, with opinion.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 29} The preamble to the Ohio Rules of Professional Conduct, entitled "A Lawyer's Responsibilities," lays out broad obligations, recognizing that "a lawyer not only represents clients but has a special responsibility for the quality of justice" and that that responsibility extends "to practicing lawyers even when they are acting in a nonprofessional capacity."  Prof.Cond.R., Preamble [1], [3].  By imposing a marginal sanction—a fully stayed one-year suspension—on respondent, Aaron Brockler, the majority minimizes his significant ethical violations and does so based upon a myopic view of the Rules of Professional Conduct.  The men and

women who serve as prosecutors in this state are authorized to enforce the law and administer justice, one of the noblest pursuits an attorney can enjoy. Accordingly, they must meet or exceed the highest ethical standards imposed on our profession. Given the significant ethical violations Brockler committed, I cannot implicitly condone the imposition of a negligible sanction for his egregious misconduct.

{¶ 30} The substantial evidence of wrongdoing and the aggravating factors in this case prove that Brockler committed significant violations of the Ohio Rules of Professional Conduct. Yet faced with Brockler's glaring disdain for the ethical responsibilities this court imposes on all attorneys in this state, a majority of this court imposes only a one-year suspension, fully stayed.

{¶ 31} In the past, our punishment for lawyers' conduct involving dishonesty, fraud, deceit, or misrepresentation has been significantly harsher. We indefinitely suspended an attorney who had lied to the disciplinary counsel's investigator. *Cleveland Metro. Bar Assn. v. Gruttadaurio*, 136 Ohio St.3d 283, 2013-Ohio-3662, 995 N.E.2d 190, ¶ 2-4. We imposed a one-year suspension, with six months stayed on conditions, on an attorney who had falsely advised that her client's case was being settled. *Disciplinary Counsel v. Johnson*, 122 Ohio St.3d 293, 2009-Ohio-3501, 910 N.E.2d 1034, ¶ 7, 14. We suspended a lawyer for six months for attempting to advance his client's interests with evidence that the lawyer knowingly fabricated. *Cleveland Bar Assn. v. McMahon*, 114 Ohio St.3d 331, 2007-Ohio-3673, 872 N.E.2d 261, ¶ 25, 30.

{¶ 32} The disciplined attorneys in those cases were ordered to serve actual suspensions, and none of them was a prosecutor. Instead, those cases all involved civil matters, in which the worst outcome risked by the lawyer's deception was the loss of money by a party.

{¶ 33} In contrast, the stakes in this case involved imprisonment for up to a life term. Brockler actively hindered the pursuit of justice in a criminal proceeding on multiple occasions, by lying to alibi witnesses in an effort to make them change

10

their statements.  He made every effort to hide his deceptive activities until they were uncovered, and then he refused to admit that his actions were wrong.

{¶ 34} Failing to require Brockler to serve even a single day of his suspension does little to establish that this court will ensure the integrity of prosecutors and the ethical administration of justice.  Indeed, none of the cases upon which the majority opinion relies to support a fully stayed sentence involves a lawyer lying in a criminal case to the detriment of a criminal defendant and, ultimately, to the detriment of the public's faith in our courts and in justice.[1]

{¶ 35} The stakes in this case are significantly higher than those in the cases cited in the majority opinion.  The courts are the bulwark of justice, and we must prove that government is trustworthy and working tirelessly but fairly, ethically, and honestly in support of justice.  To do that, we must require the offices of Ohio's prosecuting attorneys to strive for flawless obedience to the ethical rules governing all lawyers practicing in the state.

{¶ 36} Despite Brockler's claims about his training in the prosecutor's office, Brockler admits that his actions at issue in this case were not directed by a supervisor and that whatever a supervisor may have told him in the past does not

---

[1] In *Columbus Bar Assn. v. King*, the attorney lied to a landlord in a slip-and-fall case in order to add a slander claim to the complaint of his client, the landlord's former tenant.  84 Ohio St.3d 174, 175-177, 702 N.E.2d 862.  The opinion does not disclose if the landlord ever had to defend the false slander claim in court or if the deception came out prior to trial.  In *Cincinnati Bar Assn. v. Statzer*, this court found that a lawyer engaged in subterfuge that intimidated a witness during a deposition related to a disciplinary investigation for failing to provide a file to a former client.  101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 2, 16.  *Disciplinary Counsel v. Niermeyer* concerned an attorney who lied when he backdated a workers' compensation claim in order to cover up the fact that he missed a filing deadline. 119 Ohio St.3d 99, 2008-Ohio-3824, 892 N.E.2d 434, ¶ 4.  In that case, the attorney was "almost immediately * * * struck with regret and overwhelmed with guilt" over his deception. *Id.* at ¶ 5.  In contrast, Brockler steadfastly denied that his actions were unethical.  The deceit in *Disciplinary Counsel v. Potter*, 126 Ohio St.3d 50, 2010-Ohio-2521, 930 N.E.2d 307, bears even less resemblance to Brockler's case.  There, Potter's deception involved giving money to a friend to purchase, at the fairly appraised value, property from an estate of which Potter was the executor, with the plan calling for Potter to ultimately become owner of the land.  *Id.* at ¶ 6.  While recognizing that each of these cases involved dishonesty, fraud, deceit, or misrepresentation that was wholly inappropriate for a lawyer and was a discredit to our honorable profession, the stakes at issue in these cases were, at most, monetary and wholly inapposite to the circumstances here.

excuse his conduct. It is the responsibility of every Ohio lawyer to know and follow the Rules of Professional Conduct. There is no separate code of conduct that prosecutors alone get to play by.

{¶ 37} I am cognizant of Brockler's desire to serve the public and to do what is "right" by protecting society from dangerous criminal defendants, just as I am aware of the intensely difficult nature of such work, which often involves tragic circumstances, elicits visceral reactions, and presents great risks for both the accuser and the accused. *See Disciplinary Counsel v. LoDico*, 106 Ohio St.3d 229, 2005-Ohio-4630, 833 N.E.2d 1235, ¶ 30. Although criminal cases "bring the responsibility and necessity" of zealous representation, a prosecuting attorney "is not endowed with a concomitant right to denigrate the court in discharging that responsibility." *Id.*

{¶ 38} In light of the series of lies and misrepresentations here and the impact they have on the profession and our communities, I would indefinitely suspend Brockler's license to practice law in this state.

## CONCLUSION

{¶ 39} Because I believe that the court's sanction in this case is entirely incongruous with Brockler's behavior, I cannot subscribe to it. For his ethical misdeeds, I would indefinitely suspend Brockler's license to practice law in the state of Ohio. Accordingly, I dissent.

LANZINGER, J., concurs in the foregoing opinion.

_____

**O'DONNELL, J., dissenting.**

{¶ 40} Respectfully, I dissent.

{¶ 41} Respondent engaged in unacceptable dishonest conduct that materially affected the administration of justice, and I would impose an indefinite suspension.

_____

Scott J. Drexel, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie & Jonson, George D. Jonson, and Kimberly Vanover Riley, for respondent.

_____