DISCIPLINARY COUNSEL *v*. STAFFORD.

[Cite as *Disciplinary Counsel v. Stafford,* 131 Ohio St.3d 385, 2012-Ohio-909.]

*Attorneys—Misconduct—Multiple violations of the Rules of Professional Conduct over several years—Twelve-month license suspension.*

(No. 2011-0408—Submitted October 4, 2011—Decided March 8, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-028.

_____

**MCGEE BROWN, J.**

{¶ 1} Respondent, Joseph G. Stafford of Cleveland, Ohio, Attorney Registration No. 0023863, was admitted to the practice of law in Ohio in 1985. Stafford is the sole shareholder and managing partner of the law firm Stafford & Stafford Co., L.P.A. Relator, disciplinary counsel, filed an amended three-count complaint in January 2010, charging Stafford with multiple violations of the Rules of Professional Conduct.

{¶ 2} After a lengthy period of motions and discovery, a panel of the Board of Commissioners on Grievances and Discipline conducted a hearing to consider disciplinary counsel's allegations of misconduct. The hearings took place over the course of a week, during which the panel heard the testimony of Stafford and 14 additional witnesses and considered the hundreds of exhibits submitted by the parties.

{¶ 3} At the conclusion of evidence, the panel sua sponte dismissed Count Two of the complaint, due to a lack of clear and convincing evidence. On the remaining counts, the panel determined that there was clear and convincing evidence that Stafford had committed six violations of the Rules of Professional

Conduct. The panel recommended that 14 additional alleged violations be dismissed for lack of sufficient evidence or due to redundancy.

{¶ 4} The panel recommended that Stafford be suspended from the practice of law for 12 months, with the entire suspension stayed on certain conditions. The board adopted the panel's report and added supplementary justifications for recommending the stay.

{¶ 5} Disciplinary counsel objects to the board's decision recommending dismissal of an alleged violation of Prof.Cond.R. 8.4(d) (prohibiting conduct that is prejudicial to the administration of justice) in Count One and to the board's decision to stay Stafford's suspension. Stafford objects to the entirety of the board's findings of misconduct and argues that we should grant a full dismissal of the complaint.

{¶ 6} Having carefully considered the arguments of the parties and the evidence presented in this case, we overrule Stafford's objections, we overrule disciplinary counsel's objections in part, and we sustain disciplinary counsel's objections in part. We adopt the board's findings of fact and conclusions of law, and we adopt the board's recommendation that Stafford be suspended from the practice of law in Ohio for 12 months. We reject the board's recommendation to stay the suspension, however, and we impose an actual suspension of 12 months.

**Misconduct and Objections**

*Count One—The Tallisman Matter*

{¶ 7} In divorce proceedings that spanned January 2005 to early 2008, Stafford represented Susan Tallisman. Stafford filed her complaint for divorce, naming the husband, Alan Tallisman, and a variety of asset-holders as defendants. The complaint sought spousal support and a division of property, but made no mention of the prenuptial agreement that the parties had signed prior to their marriage in 1993. In the husband's February 2005 answer and counterclaim for divorce, he asserted that a prenuptial agreement limited the wife's rights to

support and property. Stafford failed to answer the counterclaim or file any further pleadings. The husband then filed a motion for summary judgment, arguing that the prenuptial agreement controlled the division of the parties' property. Stafford filed a memorandum in opposition to summary judgment, asserting that the prenuptial agreement should not be enforced. Stafford's memorandum took no issue with the certification and service of the husband's answer and counterclaim.

{¶ 8} The *Tallisman* case languished in domestic-relations court for two years, during which the case was riddled with continuances and discovery battles. On April 12, 2007, the husband, through counsel, filed a motion for judgment on the pleadings, asking for a finding that the wife's failure to answer his counterclaim constituted an admission to the averments in the counterclaim. On April 16, 2007, in correspondence pointing to the wife's failure to timely answer the husband's counterclaim, the husband's counsel proposed settling the parties' property issues. He also asserted that Stafford had committed malpractice by failing to answer the counterclaim and that Stafford's interests may be in conflict with his client's.

{¶ 9} The next day, Stafford filed, on the wife's behalf, a motion for leave to file an amended complaint. In support of his motion, Stafford claimed that he needed to include additional necessary parties, but he made no mention of the prenuptial agreement and failed to attach a copy of the amended complaint to the motion. On the same day, the trial court granted the motion ex parte, without providing the husband with an opportunity to respond. In the amended complaint, Stafford named five new asset-holders, all of whom had long since been disclosed. But for the first time in a pleading, and without mention in the motion for leave to amend, Stafford acknowledged that the prenuptial agreement existed and claimed that it was the result of fraud, coercion, and duress. On April 26,

2007, Stafford filed a brief opposing the husband's prior motions for judgment on the pleadings, noting that the court had permitted the amended complaint.

{¶ 10} On April 18, 2007, Stafford filed a motion for leave to answer the husband's February 2005 counterclaim, "premised upon issues regarding service of the answer and counterclaim." Again, the court granted leave on the same day without allowing the husband to respond. Also on April 18, 2007, the court filed a judgment entry, which for some unknown reason had not been filed after being signed on October 20, 2005, denying the husband's June 2005 motion for summary judgment. In the wife's belated answer to the husband's counterclaim, Stafford asserted that the prenuptial agreement identified in the counterclaim was unenforceable.

{¶ 11} On April 19, 2007, the husband filed a series of motions arguing that Stafford had manipulated the Civil Rules in order to belatedly introduce arguments that he had previously failed to raise. Counsel for the husband also looked into the accusation that there were "issues regarding service of the Answer and Counterclaim" and found that the husband's original certificate of service in the answer and counterclaim had disappeared from the files of the clerk of courts. Counsel for the husband had retained duplicate copies, which showed that the originals of the answer and counterclaim sent to Stafford had included a certificate-of-service page. Counsel sent this information to the court in a notice and filing of a replacement certificate-of-service page of his original answer and counterclaim.

{¶ 12} At the disciplinary hearing, Stafford testified that he had not received the answer and counterclaim when it was filed in February 2005 and that he did not obtain a copy of it until April or May 2007. However, correspondence between Stafford and opposing counsel, as well as Stafford's own June 13, 2005 memorandum in opposition to the husband's summary judgment motion, discuss the husband's answer and counterclaim, which indicates that Stafford was

properly served. Although it was evident that Stafford had long been aware of the husband's answer and counterclaim, both sides entered an antagonistic battle over the husband's proposed replacement certificate, involving a succession of motions, conferences, and bitter correspondence.

{¶ 13} On May 24, 2007, Stafford, on behalf of the wife, filed a motion for leave to file a second amended complaint, again requesting the addition of allegedly newly disclosed parties. Stafford asserted in the motion that leave was not even required because of "issues raised concerning the failure of the defendant to properly serve his answer and counterclaim." The court again granted the motion ex parte. Stafford's second amended complaint named additional defendants, all of whom had been disclosed as stakeholders in prior pleadings and discovery.

{¶ 14} Additionally, in a supplement to the wife's original opposition to the husband's motion for judgment on the pleadings, Stafford explicitly asserted that the husband had failed to comply with Civ.R. 5(D) by failing to include a certificate of service with his answer and counterclaim and argued that the answer and counterclaim were therefore not properly before the court. Stafford repeated this claim during the responsive briefing of issues related to the husband's counterclaim.

{¶ 15} On June 13, 2007, the husband filed motions to vacate the ex parte orders allowing Stafford's amended complaints and to strike the amended complaints from the record. On January 3, 2008, the trial court filed a judgment entry addressing motions filed by both parties from 2005 to 2007. The court declined to strike the husband's answer and counterclaim for divorce or the motions for judgment on the pleadings and to have averments deemed admitted, denied the motion for judgment on the pleadings, and partially granted the motion to have averments deemed admitted as to the existence of the prenuptial agreement, but reserved judgment on the agreement's enforceability. The

decision also vacated the previously granted leave for the wife to respond to the husband's counterclaim for divorce, struck the wife's belated response to the husband's counterclaim, provided an opportunity for the wife to make a showing of excusable neglect to revive the response to the counterclaim, vacated the previously granted leave to amend, and struck the wife's second amended complaint.

{¶ 16} In the decision, the trial court explained the importance of quickly granting leave to amend pleadings to add new defendants in domestic-relations cases to protect the marital estate from dissipated or hidden assets. The trial court noted that Stafford's attempt to add defenses related to the prenuptial agreement was not appropriate for ex parte treatment and that it altered the pleading to require providing the opposing party with the opportunity to respond. The trial court noted that it was customary to grant immediate leave only to include newly found defendants and that Stafford's attempted action was not contemplated in the trial court's customary proceedings.

{¶ 17} After the appointed receiver evaluated the parties' assets and evaluated their pleadings, a receiver's assessment allowed the parties to amicably settle the property-division issues.

{¶ 18} The board determined that Stafford had "intentionally misled the court by filing his motion for leave to file an amended complaint on specific grounds stated and then surreptitiously including an additional allegation regarding the prenuptial agreement omitted in the original complaint but critical to his client's interests." The board further noted that Stafford had misled the domestic-relations court into granting ex parte relief "without the court's full knowledge of the extent and purpose of the relief sought and by taking advantage of local rules not designed for the purpose to do so."

{¶ 19} Based upon these factual findings, the board concluded that Stafford's conduct involved one violation of Prof.Cond.R. 8.4(c) (prohibiting

conduct involving dishonesty, fraud, deceit, or misrepresentation) and one violation of Prof.Cond.R. 3.3(d) (in an ex parte proceeding, requiring a lawyer to inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse). However, the board recommended dismissal of disciplinary counsel's two additional alleged violations of Prof.Cond.R. 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), one additional alleged violation of Prof.Cond.R. 3.3(d), and all remaining allegations of violations of Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 8.4(d), and 8.4(h) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law).

*Objections to Count One*

{¶ 20} Disciplinary counsel objects to the board's recommendation that we dismiss the violation of Prof.Cond.R. 8.4(d), arguing that Stafford's actions as found by the board constituted conduct that was prejudicial to the administration of justice. Stafford objects to the board's decision on Count One in its entirety, arguing that disciplinary counsel has failed to prove that Stafford has committed any misconduct whatsoever.

{¶ 21} In a disciplinary proceeding, the relator bears the burden of proving an attorney's misconduct "by clear and convincing evidence." Gov.Bar R. V(6)(J). The standard of clear and convincing evidence is an intermediate standard that requires "more than a mere preponderance" of the evidence, but not "such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*." (Emphasis sic.) *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954), paragraph seven of the syllabus.

{¶ 22} To buttress his assertion that finding a violation of Prof.Cond.R. 8.4(c) is unsupported, Stafford recites his extensive and complex version of the

events surrounding his motions to amend the pleadings and argues that the board misunderstood or misconstrued the evidence by failing to adopt his version.

{¶ 23} The documents presented by the parties fully support the board's findings that the additional defendants that Stafford added to the wife's pleadings were known to Stafford far in advance of the motions. Although Stafford provides a number of reasons to justify his later addition of those parties in spite of this knowledge, the board found credible evidence that Stafford's justification was not appropriate. There was no danger of assets being dissipated because both parties were aware of the additional defendants. Stafford's conduct in seeking an ex parte order cannot be justified by fear of concealment or dissipations of assets. The board correctly concluded that Stafford unjustifiably alleged the existence of the prenuptial argument in the amended complaint without any mention of the issue in his motions for leave to amend the pleadings.

{¶ 24} By insisting that he slipped the prenuptial-agreement argument in under the cover of a legitimate issue instead of a flimsy façade, Stafford largely distracts from the core problem. He was not honest with the court when he amended the complaint to add a defense that he might have otherwise waived. Further, we reject Stafford's contention that the ultimate settling of the case somehow legitimized his unscrupulous procedural tactics.

{¶ 25} By obtaining ex parte leave to file amended complaints, Stafford attempted to avoid responding to the husband's related motions and attempted to deprive the husband of the opportunity to file any opposition. By exploiting the peculiar ex parte motions practice of the Domestic Relations Division of the Cuyahoga County Common Pleas Court, Stafford was able to surreptitiously add to the wife's pleadings an untimely denial of the validity of the prenuptial agreement. Stafford's actions contributed to extending the proceedings into a years-long war, replete with extensive, bitter battles over every minute detail. Almost a year after Stafford filed the first amended complaint, the trial court

issued a decision overruling the previous order permitting the ex parte motions to file the amended complaint.

{¶ 26} While Stafford repeatedly claimed that there were problems with the service of the husband's answer and counterclaim, implying that the wife was never served, the record discloses that the answer and counterclaim were expressly acknowledged by Stafford during the proceedings in 2005. By belatedly manufacturing an issue with the service of the counterclaim, Stafford attempted to relieve the wife for two years of her obligation to justify her failure to answer the husband's counterclaim.

{¶ 27} In this disciplinary case, both sides presented evidence to the panel over the course of a week, and hundreds of documents were considered by the panel and board. Because the panel was in the best position to assess the credibility of the witnesses and rejected Stafford's testimony that he did not intentionally mislead the trial court into considering additional pleadings, we defer to that determination. *See Cuyahoga Cty. Bar Assn. v. Wise,* 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24 ("Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand"). Accordingly, we overrule Stafford's objections and adopt the board's findings of fact and conclusion that Stafford's conduct constituted a violation of Prof.Cond.R. 8.4(c).

{¶ 28} Stafford next objects to the board's conclusion that Stafford violated Prof.Cond.R. 3.3(d). Stafford argues that the board's conclusion is contradicted by the board's own finding that the use of ex parte orders was part of common procedure in the Domestic Relations Division of the Cuyahoga County Common Pleas Court. However, Prof.Cond.R. 3.3(d) prohibits the omission of known material facts in ex parte proceedings, not ex parte proceedings themselves. The rule recognizes that in ex parte proceedings, an attorney has an

enhanced responsibility to disclose any material information, whether it be favorable or unfavorable, due to the absence of the opposing advocate. Staff comment 14.

{¶ 29} Stafford argues that his use of the ex parte motions practice "is in no way evidence of misconduct on the part of the Respondent. If it were, then every attorney practicing in Cuyahoga County Domestic Relations Court would be guilty of ethical violations." During oral argument before this court, Stafford repeatedly stressed that his filing of ex parte motions was simply the way people practice in that county's domestic-relations court.

{¶ 30} Without belaboring the point, Stafford's assertion—that his conduct is merely the way attorneys practice in Cuyahoga County Domestic Court—is simply not accurate, nor is it a defense. Moreover, it is an insult to every ethical attorney who practices in Cuyahoga County. Each attorney licensed to practice law in Ohio is required to abide by the Rules of Professional Conduct. The customary use of a particular procedure cannot condone the unethical exploitation of that procedure. It is axiomatic that "[a]ttorneys must use the tools of our legal system as they were intended," and they have "a duty not to abuse legal procedure." *Columbus Bar Assn. v. Finneran*, 80 Ohio St.3d 428, 430, 687 N.E.2d 405 (1997). Stafford abused the domestic-relations court's procedure and deceived the court by requesting leave to amend a pleading, bringing attention to a singular issue while surreptitiously including a completely different and unrelated amendment in the pleadings. Belatedly sneaking a defense into pleadings without the knowledge or permission of the court constitutes a failure to "inform the tribunal of all material facts known to the lawyer." Prof.Cond.R. 3.3(d). Accordingly, we overrule Stafford's objections and adopt the board's findings of fact and conclusion that Stafford's conduct constituted a violation of Prof.Cond.R. 3.3(d).

{¶ **31**} Disciplinary counsel objects to the board's recommendation that we dismiss the portion of Count One charging Stafford with violating Prof.Cond.R. 8.4(d). Disciplinary counsel asserts that we have previously held that intentionally misleading a court can constitute conduct that is prejudicial to the administration of justice, citing *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, ¶ 15; *Akron Bar Assn. v. Markovich*, 117 Ohio St.3d 313, 2008-Ohio-862, 883 N.E.2d 1046, ¶ 7-9; and *Disciplinary Counsel v. Robinson*, 126 Ohio St.3d 371, 2010-Ohio-3829, 933 N.E.2d 1095, ¶ 20-22.

{¶ **32**} In all these cases, the respondents engaged in behavior that not only involved misrepresentations or dishonesty in violation of Prof.Cond.R. 8.4(c), but also encompassed a violation of 8.4(d) by having additional deleterious effects on the cases and clients. *Hardiman* at ¶ 4-5 (the respondent led a litigant and opposing counsel to believe that respondent was representing the litigant and then did not appear for court, causing judgment to be entered against the litigant); *Markovich* at ¶ 17 (among other violations, respondent was disruptive during proceedings and discourteous to the court and opposing counsel during proceedings, disobeyed court rulings, and was cited for contempt); *Robinson* at ¶ 6-11 (respondent lied under oath and secretly destroyed evidentiary documents). Here, time and money were certainly wasted as a result of Stafford's behavior, but we defer to the board's findings and conclude that no actual legal prejudice occurred. Accordingly, we overrule disciplinary counsel's objections and adopt the board's findings of fact and conclusion that disciplinary counsel failed to establish by clear and convincing evidence that Stafford's conduct in Count One violated Prof.Cond.R. 8.4(d).

{¶ **33**} Both sides in this case have presented a considerable amount of evidence to the panel, which was reviewed by the full board. After thoroughly reviewing the record, we overrule the remaining objections of both parties. We

defer to the panel's credibility determinations, and we adopt the board's findings of fact. In accordance with the board's recommendation, we hold that Stafford violated Prof.Cond.R. 3.3(d) and 8.4(c), and we dismiss the remaining charges in Count One.

*Count Two—Events Preceding the* Rymers *Matter*

**{¶ 34}** Although the hearing panel sua sponte dismissed Count Two, a brief account of the facts will help form the context in which the events in Count Three occurred.

**{¶ 35}** In November 2000, Eugene A. Lucci was elected judge of the Lake County Court of Common Pleas and held office from January 2001 through the time of the events recounted in Count Three. Lucci separated from his wife in November 2007, and the parties planned to divorce. Around December 2007, Lucci became involved with Amy Rymers, who was married to but separated from her husband, Jeffery Rymers.

**{¶ 36}** On March 12, 2008, Lucci had a meeting with Stafford at Stafford's law firm to discuss his marital situation, his negotiations with his wife's attorney, and his preparation of a proposed separation agreement. Lucci and Stafford provided conflicting testimony as to whether there was any mention of Lucci's relationship with Amy Rymers, but Stafford's notes from the meeting were consistent with Stafford's contentions that there was no mention of it. Lucci and Stafford had no further meetings or discussions, no retainer agreement was signed, and no letter of undertaking was provided. Stafford took no part in Lucci's dissolution proceedings. Lucci testified that he believed that Stafford would have represented him if the matter had proceeded to a contested divorce. Amy Rymers and her children began living with Lucci in September 2008. The Luccis' dissolution was finalized in October 2008.

*Count Three—The* Rymers *Matter*

{¶ 37} The Rymers' divorce proceedings began in 2009. Stafford represented Jeffery. Amy filed a complaint for divorce in the Lake County Common Pleas Court, and a visiting judge was assigned to preside over the case. After Stafford filed his notice of appearance, Lucci, through counsel, contacted Stafford and asserted that his representation in the *Rymers* case conflicted with Lucci's interests.

{¶ 38} In a May 19, 2009 letter, Lucci's counsel explained Lucci's personal and financial involvement with Amy, as well as Lucci's past consultation with Stafford regarding his own divorce matters, and asked that Stafford withdraw from representation in the *Rymers* matter. A paragraph in the correspondence, with which Stafford would later take issue, reads as follows:

{¶ 39} "In addition, in earlier discussions between the Rymers [sic], Mr. Rymers claimed that, among the issues he intends to raise in his custody fight, is the danger of Mrs. Rymers being involved with Mr. Lucci, who as you know is a Common Pleas Judge in Lake County. Mr. Rymers said he is concerned for the children's safety if potential transgressors, etc. seek revenge against a judge."

{¶ 40} After Stafford did not withdraw from the Rymers case, Lucci filed a motion to intervene and to disqualify Stafford as counsel, asserting that Stafford's prior consultation with Lucci caused a conflict of interest.

{¶ 41} Stafford sent his recently hired associate, Nicholas M. Gallo, to attend the June 3, 2009 pretrial conference with Jeffery. Neither Jeffery nor Gallo had ever met Lucci. While the parties were waiting for the conference to begin, the wife's attorney approached the husband and Gallo and personally delivered Lucci's motion to intervene. At about this time, Jeffery noticed a man, whom Jeffery believed to be Lucci, in the hallway outside Lucci's chambers. Jeffery believed that the man was staring at him as if to intimidate him. Jeffery brought this circumstance to Gallo's attention, and Gallo contacted Stafford about the

incident. Upon hearing Gallo's verbal description of the man in the hallway, Stafford concluded that the description matched that of Lucci and directed Gallo to prepare a motion to strike Lucci's motion to intervene as well as a motion for sanctions and attorney fees. Stafford directed both Gallo and the husband to complete affidavits about the incident to include with the motions. Both affidavits accused Lucci of threatening and intimidating the husband by staring at him.

{¶ 42} On June 17, 2009, Stafford filed the motion to strike and/or dismiss the motion to intervene and the motion for sanctions and attorney fees pursuant to R.C. 2323.51 and Civ.R. 11. Stafford's memorandum in support of the motions not only contested the merits of Lucci's motion to intervene, but also accused Lucci of committing misconduct by filing the motion and abusing his position as judge of the Lake County Common Pleas Court. Stafford's memorandum referred to Lucci as Judge Lucci, attacked Lucci's integrity, wisdom, and ethics in his position as a judge, and specifically accused Lucci of violating Jud.Cond.R. 1.3 (prohibiting abuse of the prestige of judicial office). Gallo's and Jeffery's affidavits were attached to the motion.

{¶ 43} Stafford claimed in the June 17, 2009 memorandum that Lucci had committed threatening conduct not only toward Jeffery, but also toward Stafford himself in Lucci's counsel's May 19, 2009 letter demanding that Stafford withdraw from Jeffery's case. Specifically, Stafford asserted that Jeffery had been "intimidated and threatened by the conduct of [Lucci] in this matter, including but not limited to, his threats and his conduct at the most recent pretrial in this matter. This is especially so, given [Lucci's] position as a presiding [sic] in the Lake County Court of Common Pleas." Stafford also claimed that Lucci had "engaged in a pattern of harassing and threatening conduct" toward both the husband and Stafford and that Lucci had "intimated on numerous occasions these

14

threats, based upon [Lucci's] position as a presiding Judge in the Lake County Court of Common Pleas."

{¶ 44} Stafford accused Lucci of using "veiled threats" in the May 19, 2009 letter. Stafford quoted the letter as stating: "[I]n earlier discussions between the Rymers [sic], Mr. Rymers claimed that, among the issues he intends to raise in his custody fight, is the danger of Mrs. Rymers being involved with Mr. Lucci, *who as you know is a Common Pleas Judge in Lake County.*" (Emphasis added by respondent.) By abridging this quote and using it out of context, Stafford created the appearance of a threat where there was none.

{¶ 45} Shortly after Stafford's filing of the above motions and memorandum, Gallo resigned from Stafford's firm. Gallo testified that he had based his averments in the affidavit on his conversation with Stafford, during which Stafford told Gallo that the description matched Lucci's.

{¶ 46} On June 26, 2009, Lucci filed a response to the husband's motion to strike and averred that he had not been in the hallway the day of the pretrial and had not engaged in any staring or intimidation. Despite Lucci's response, Stafford took no action to investigate, verify, or refute Lucci's sworn statement. Recorded video from the court later proved that the man in the hallway was not Lucci. On January 25, 2010, Stafford filed a motion to withdraw the affidavits of the husband and Gallo; however, Stafford filed no memorandum with the motion and did not move to withdraw his own June 17, 2009 motion, which included the incendiary statements at issue today.

{¶ 47} The board determined that Stafford had personally instructed his subordinate associate to prepare a motion to strike Lucci's motion to intervene and to prepare the affidavits claiming that Lucci had threatened and intimidated the husband. The board found that the statement regarding intimidation was completely false and irrelevant to the legal issues presented in the motion and that Stafford had impugned Lucci's judicial integrity by accusing him of violating the

Rules of Judicial Conduct in an improper forum. The board further found that the excerpt of correspondence from Lucci's counsel was taken out of context and used "in a deliberately misleading manner to imply a threatened abuse of judicial status that was not made." The board concluded that Stafford had made deliberate misrepresentations to the domestic-relations court regarding the conduct of both Lucci and Lucci's counsel with the intent to deceive the court.

{¶ 48} Based upon these factual findings, the board concluded that Stafford's conduct violated Prof.Cond.R. 5.1(c)(1) (declaring that a lawyer shall be responsible for another lawyer's violation of the Ohio Rules of Professional Conduct if the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved), 8.2(a) (prohibiting a lawyer from making a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the integrity of a judicial officer), 8.4(c), and 8.4(d).

{¶ 49} However, the board recommended dismissal of alleged violations of Prof.Cond.R. 3.3(a)(3) (prohibiting a lawyer from offering evidence that he knows to be false and requiring remedial measures if the lawyer later comes to know that evidence is false), 4.1(b) (prohibiting a lawyer from failing to disclose a material fact when disclosure is necessary to avoid assisting a fraudulent act by a client), 5.1(c)(2) (declaring that a lawyer shall be responsible for another lawyer's violation of the Ohio Rules of Professional Conduct if the lawyer is a partner in the law firm in which the lawyer practices and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action), and 8.4(h) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law).

*Objections to Count Three*

{¶ 50} As with Count One, Stafford objects to the board's decision on Count Three in its entirety, arguing that disciplinary counsel failed to prove that Stafford committed any misconduct whatsoever. Because the record does not

weigh heavily against the board's findings, we again defer to the credibility determinations of the panel, and we adopt the board's findings of fact and misconduct. See *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

**{¶ 51}** First, Stafford asserts that there was no proof of a violation of Prof.Cond.R. 5.1(c)(1) because there was no proof that Stafford had supervised Gallo, no proof that Stafford had participated in the motion to strike or the affidavits of Gallo and Jeffery, and no proof that Gallo committed misconduct.

**{¶ 52}** Evidence clearly and convincingly supports the board's findings. Stafford is a partner in his firm and had supervisory authority over Gallo. Stafford was counsel of record in the Rymers case and had personally assigned Gallo to participate in it. Stafford was lead counsel for the motion to strike, the motion alleged that Stafford himself was one of the victims of Lucci's alleged threats, and Stafford's personal affidavit regarding his past interactions with Lucci is attached to the motion. Finally, the record reflects that Gallo personally made statements that were false, inflammatory, and irrelevant to the issues presented. Gallo has been publicly reprimanded for his misconduct. *Disciplinary Counsel v. Gallo*, 131 Ohio St.3d 309, 2012-Ohio-758, 964 N.E.2d 1024. Accordingly, we overrule Stafford's objections and adopt the board's findings of fact and conclusion that Stafford's conduct constituted a violation of Prof.Cond.R. 5.1(c)(1).

**{¶ 53}** Stafford asserts that Prof.Cond.R. 8.2(a) is inapplicable because Lucci was not acting in his official capacity as a judge. However, Prof.Cond.R.8.2(a) makes no differentiation among the different possible roles of the judge: the focus is on the conduct of the attorney. A judge need not be acting in his official capacity for an attorney to violate the prohibition against making a recklessly false statement concerning that judge's integrity as a judicial officer.

*See, e.g., Disciplinary Counsel v. Baumgartner,* 100 Ohio St.3d 41, 2003-Ohio-4756, 796 N.E.2d 495, ¶ 8-9.

**{¶ 54}** Stafford further asserts that no violation of Prof.Cond.R. 8.2(a), 8.4(c), or 8.4(d) occurred because Stafford had no knowledge that the statements were false, because Stafford himself made no false statements, because any misrepresentation in Stafford's own motion regarding the Lucci correspondence was dispelled by the attached copy of the correspondence, and because the affidavits were withdrawn once the falsity of the statements came to light.

**{¶ 55}** This court uses " 'an objective standard to determine whether a lawyer's statement about a judicial officer is made with knowledge or reckless disregard of its falsity.' " *Disciplinary Counsel v. Gardner,* 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, at ¶ 26, quoting Annotated Model Rules of Professional Conduct, Rule 8, 566 (4th Ed.1999). This standard looks to " ' "what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances" * * * [and] focuses on whether the attorney had a reasonable factual basis for making the statements, considering their nature and the context in which they were made.' " *Id.*, quoting *Standing Commt. on Discipline of United States Dist. Court for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1437 (9th Cir.1995), quoting *United States Dist. Court, E. Dist. of Washington v. Sandlin*, 12 F.3d 861, 867 (9th Cir.1993). Accordingly, we held that sanctions are appropriate when an attorney lodges accusations of judicial impropriety that a reasonable attorney would consider untrue. *Gardner* at ¶ 31.

**{¶ 56}** A failure to make any real inquiry into a judicial officer's integrity prior to making accusations of judicial impropriety demonstrates a reckless disregard for the truth. *Gardner* at ¶ 33. Here, Stafford did nothing to verify the truth of the statements of Gallo and Jeffery when he instructed them to complete

affidavits, and he further failed to conduct any inquiry after Lucci filed a sworn statement denying the allegations of Gallo and Jeffery.

{¶ 57} Stafford intentionally and unnecessarily demeaned Lucci as a judge in a manner that was reckless and in the public record. He recklessly presented false evidence to the court. Stafford himself made false statements regarding the integrity of Lucci as a judicial officer in his memorandum in support of the motion to strike and/or dismiss the motion to intervene and the motion for sanctions and attorney fees, and failed to withdraw the memorandum even after the falsity of the statements had been exposed and after the supporting affidavits of Gallo and Jeffery had been withdrawn.

{¶ 58} As for Stafford's additional claim that Lucci made threatening statements in correspondence, a reasonable attorney would believe that Stafford's statement was false because the statements, when read in context, conveyed no threat whatsoever. Certainly Stafford's distortions regarding Lucci's letter are able to be dispelled by closer examination of the letter itself. However, Stafford's blatant use of the quote out of context, manipulation of the language, and accusations of violations of the Code of Judicial Conduct are histrionics that are unbecoming a member of the bar. Accordingly, we overrule Stafford's objections and adopt the board's findings that Stafford's conduct constituted violations of Prof.Cond.R. 5.1(c)(1), 8.2(a), 8.4(c), and 8.4(d), and we dismiss the remaining charges in Count Three.

*Additional Objections*

{¶ 59} In addition to the specific counts, Stafford introduces a panoply of objections, largely related to procedural matters. Stafford argues that the board violated his due-process rights by considering certain portions of Count One, even though the probable-cause panel had not reviewed them. Disciplinary counsel correctly points out that nothing presented to the probable-cause panel is ever

before the hearing panel, the board, or this court. Pursuant to Gov.Bar R. V(11)(E), those proceedings are private.

{¶ 60} Stafford also argues that disciplinary counsel should not have been permitted to bring the additional charges presented in Count Three, because the charges were not presented to a probable-cause panel. However, once a formal complaint is pending, a disciplinary complaint may be amended at any time "prior to final order of the Supreme Court" as long as the respondent is given a reasonable opportunity to respond. Gov.Bar R. V(11)(D); *Disciplinary Counsel v. Heiland*, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 33-34; BCGD Proc.Reg. 9(D) ("The relator may not amend the complaint within thirty days of the scheduled hearing without a showing of good cause to the satisfaction of the panel chair"). Stafford has not provided any evidence that he was prevented from preparing or responding to the amended charges in the complaint.

{¶ 61} Next, Stafford claims that disciplinary counsel violated Gov.Bar R. V(4)(D), which requires a disciplinary investigation to be completed within 60 days of filing a grievance, unless an extension is granted for good cause, and the disposition is to be decided within 30 days of the close of the investigation. Here, disciplinary counsel was granted multiple extensions of time for good cause. Stafford is correct that "[i]nvestigations that extend beyond one year from the date of filing are prima facie evidence of unreasonable delay." Gov.Bar R. V(4)(D)(3). However, Stafford does not assert, let alone demonstrate, that he was prejudiced by the delay. Gov.Bar R. V(4)(D)(3) requires a showing "that the rights of the respondent to have a fair hearing have been violated" before a grievance can be dismissed. We agree with the board's decision to deny Stafford's motion to dismiss and overrule Stafford's objection.

{¶ 62} Stafford next claims that disciplinary counsel did not provide proper responses to some of the hundreds of requests for admission filed by Stafford regarding some specifics of the husband's assets in the *Tallisman* matter.

Upon review of the record, we agree with the board's conclusion that Stafford's motions to compel merely disputed disciplinary counsel's statements and sought to introduce matters that were irrelevant and distracted from the question of Stafford's alleged misconduct. We review the board's decisions to deny Stafford's motions to compel for an abuse of discretion, and we find none. *See, e.g., Columbus Bar Assn. v. Ewing*, 75 Ohio St.3d 244, 252, 661 N.E.2d 1109 (1996) (upholding the panel's discovery decisions that "appropriately confined respondent to relevant matters").

{¶ 63} Finally, Stafford objects to various prehearing rulings by the board, including an order preventing Stafford from presenting the argument that attorney James Cahn, Mr. Tallisman's attorney, had committed malpractice in the *Tallisman* matter and that Cahn had personal motives for filing the grievance against Stafford. He also objects to the orders separating witnesses and finding that the testimony of three additional witnesses would be irrelevant to the issues before the panel. Again, we find that Stafford's arguments were largely a distraction from facts and issues that were relevant to a determination whether Stafford had committed misconduct. We conclude that the board did not abuse its discretion by ruling adversely to Stafford on these motions. Accordingly, we overrule Stafford's objections.

## Sanction

{¶ 64} When imposing sanctions for attorney misconduct, we weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. In making a final determination, we consider a number of factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account

"all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 65} In terms of aggravating factors, the board found that Stafford had acted with a dishonest motive, committed multiple violations of the Ohio Rules of Professional Conduct, and refused to acknowledge the wrongful nature of his conduct. *See* BCGD Proc.Reg. 10(B)(1)(b), (d), and (g). In terms of mitigating factors, the board found that Stafford had no record of professional misconduct. *See* BCGD Proc.Reg. 10(B)(2)(a). Although Stafford did not submit any evidence of his character or reputation, testimony from attorney Cahn and Judge Lucci indicated that Stafford was a "very good lawyer." The board found that Stafford enjoys a good professional reputation. *See* BCGD Proc.Reg. 10(B)(2)(e). The board recommended that Stafford be suspended from the practice of law in Ohio for a period of 12 months, with all 12 months stayed on the condition that he engage in no further professional misconduct.

{¶ 66} Disciplinary counsel objects to the board's recommended sanction and contends that we should impose an actual suspension of no less than 12 months. We agree.

{¶ 67} In cases that involve multiple instances of misconduct that include a violation of Prof.Cond.R. 8.4(c), we impose an actual suspension. *See Disciplinary Counsel v. Robinson*, 126 Ohio St.3d 371, 2010-Ohio-3829, 933 N.E.2d 1095, ¶ 48; *Cincinnati Bar Assn. v. Farrell*, 119 Ohio St.3d 529, 2008-Ohio-4540, 895 N.E.2d 800, ¶ 21.

{¶ 68} Stafford's six violations of the Rules of Professional Conduct stemmed from a course of conduct that was replete with dishonest, deceptive, and disrespectful acts. When an attorney engages in such conduct and violates Prof.Cond.R. 8.4(c), "the attorney will be actually suspended from the practice of law for an appropriate period of time." *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. "A lawyer who engages in a

material misrepresentation to a court * * * violates, at a minimum, the lawyer's oath of office that he or she will not 'knowingly * * * employ or countenance any * * * deception, falsehood, or fraud.' " *Id.* at 190, quoting former Gov.Bar R. I(8)(A). "Such conduct strikes at the very core of a lawyer's relationship with the court and with the client. Respect for our profession is diminished with every deceitful act of a lawyer." *Id.*

{¶ 69} Additionally, Stafford's misconduct in the *Rymers* matter included false statements concerning the integrity of a judicial officer. When an attorney engages in such conduct and violates Prof.Cond.R. 8.2(a), we "require an actual suspension from the practice of law." *Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, at ¶ 36, citing *Disciplinary Counsel v. West*, 85 Ohio St.3d 5, 706 N.E.2d 760 (1999), and *Columbus Bar Assn. v. Hartwell*, 35 Ohio St.3d 258, 520 N.E.2d 226 (1988). In more extreme cases involving an unfounded attack against the integrity of a judicial officer, we have indefinitely suspended offending attorneys and have even imposed permanent disbarment. *See, e.g., Disciplinary Counsel v. Frost*, 122 Ohio St.3d 219, 2009-Ohio-2870, 909 N.E.2d 1271 (indefinite suspension); *Baumgartner*, 100 Ohio St.3d 41, 2003-Ohio-4756, 796 N.E.2d 495 (disbarment).

{¶ 70} When an attorney exhibits a pattern of abusing legal procedures, be it for his own gain or for his client's advantage, an actual suspension from the practice of law is called for. *See, e.g., Finneran*, 80 Ohio St.3d at 430, 687 N.E.2d 405; *Disciplinary Counsel v. Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361, ¶ 21. In *Finneran*, we indefinitely suspended an attorney from the practice of law after he engaged in a years-long pattern of "serial refiling" and other evasive and dilatory tactics, intending to procure a more favorable settlement offer from opponents in the face of even more protracted proceedings. *Id.* at 431. The attorney in *Holland* took advantage of the technicalities of a juvenile court's fee-payment process and obtained fees from the

court for more hours than he possibly could have worked. *Holland* at ¶ 7-8. This court rejected the attorney's argument that the juvenile court condoned his billing practices because it paid his requested fees, and we imposed a one-year suspension. *Id.* at ¶ 19, 25.

{¶ 71} It is true, as Stafford submits, that we have imposed partially or fully stayed terms of suspension in some disciplinary cases where an attorney's violations involved dishonest, deceitful, or fraudulent conduct. *See Cincinnati Bar Assn. v. Reisenfeld*, 84 Ohio St.3d 30, 701 N.E.2d 973 (1998); *Disciplinary Counsel v. Fumich*, 116 Ohio St.3d 257, 2007-Ohio-6040, 878 N.E.2d 6; *Disciplinary Counsel v. Niermeyer*, 119 Ohio St.3d 99, 2008-Ohio-3824, 892 N.E.2d 434; *Disciplinary Counsel v. Potter*, 126 Ohio St.3d 50, 2010-Ohio-2521, 930 N.E.2d 307.

{¶ 72} In *Reisenfeld*, an attorney had improperly executed and notarized affidavits in what the attorney claimed to be emergency circumstances. *Id.* at 31-32. We imposed a six-month, stayed suspension because the violations were isolated incidents in an otherwise unblemished legal career, they did not constitute an ongoing course of conduct, no client was harmed, and the attorney readily cooperated in the investigation. *Id.*

{¶ 73} The attorney in *Fumich* engaged in a more serious course of misconduct by accidentally causing a client's medical-malpractice case to be dismissed, failing to reveal the dismissal to the client, negotiating a nonexistent settlement, and then paying the "settlement" amount out of the attorney's own personal funds. *Fumich,* 116 Ohio St.3d 257, 2007-Ohio-6040, 878 N.E.2d 6, at ¶ 4-7. Notwithstanding this dishonesty, we imposed a 12-month, stayed suspension due to the absence of aggravating factors and the significant mitigating evidence that the attorney had no prior disciplinary record, cooperated fully in the disciplinary process, accepted responsibility for his wrongful conduct,

submitted various character letters, and had not caused financial harm. *Id.* at ¶ 11, 16-18.

**{¶ 74}** In *Niermeyer*, the attorney committed a single act of misconduct by filing a falsified document with the Bureau of Workers' Compensation. *Niermeyer,* 119 Ohio St.3d 99, 2008-Ohio-3824, 892 N.E.2d 434, at ¶ 4. Despite finding that the attorney had acted with a dishonest or selfish motive, we imposed a 12-month, stayed suspension due to the significant mitigating evidence that the attorney had self-reported the misconduct, had made immediate efforts to rectify the matter, had no disciplinary record, cooperated fully in the disciplinary process, accepted responsibility for his wrongful conduct, and had submitted evidence of good character and reputation. *Id.* at ¶ 9, 13-14.

**{¶ 75}** In *Potter*, the attorney was the executor of an estate that held property that the attorney wanted to purchase. *Id.*, 126 Ohio St.3d 50, 2010-Ohio-2521, 930 N.E.2d 307, at ¶ 6. The attorney asked a friend to purchase the property with the attorney's funds and did not disclose the situation to anyone involved with the estate. *Id.* Again, despite a finding of dishonest or selfish motive, we imposed a stayed 12-month suspension due to the isolated nature of the incident and the significant mitigating evidence that the attorney self-reported the misconduct, made immediate efforts to rectify the matter, had no disciplinary record, cooperated fully in the disciplinary process, and accepted responsibility for his wrongful conduct. *Id.* at ¶ 7, 9-11.

**{¶ 76}** Stafford maintains that there is no difference between these latter cases and his own. However, they all involve attorneys who have a single, isolated incident of misconduct in an otherwise unblemished legal career and/or an abundance of mitigating factors. Stafford's case does not present such a situation, as he has engaged in multiple acts of misconduct over the course of multiple years, and the aggravating factors in his case far outweigh those offered in mitigation. Accordingly, we reject Stafford's argument for a lesser sanction.

**{¶ 77}** We also reject the board's recommended lesser sanction. The board justified staying Stafford's suspension by relying on *Stark Cty. Bar Assn. v. Ake,* 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206. In *Ake*, the attorney had represented himself in his own divorce proceedings and deliberately ignored the domestic-relations court's orders on five separate occasions during the proceedings. *Id.* at ¶ 39. The attorney's actions constituted a number of violations, including the equivalents to the current Prof.Cond.R. 8.4(c), (d), and (h). *Id.* at ¶ 38. Because this court was confident that the attorney's violations arose out of unique circumstances and would not be repeated, we imposed a six-month suspension, with the entire period stayed upon certain conditions. *Id.* at ¶ 46-47.

**{¶ 78}** Here, the board determined that the circumstances surrounding Stafford's myriad violations were similarly unique and believed that neither the similar circumstances nor the violations committed by Stafford were likely to recur. Specifically, the board found that Stafford's misconduct in *Tallisman* arose in the peculiar ex parte practice of the local court and that the misconduct occurred before the trial judge actively took control, after which the proceedings were brought to order and were resolved through an amicable settlement. The board found that Stafford's misconduct in *Rymers* was inspired by an "overreaction in kind to Lucci's claim of Stafford's breach of ethics by appearing as counsel in the Rymers case." The board found both counts to have arisen in "a highly unusual circumstance unlikely to recur."

**{¶ 79}** We agree with the board that the circumstances of any contested divorce proceeding are unique and complex. However, Stafford's circumstances—namely his role as an attorney in a contested-divorce proceeding—are certain to recur. We conclude that the circumstances in this case are not analogous to those in *Ake* and are more similar to cases such as *Finneran*, when the attorney's repeated attempts to mislead warranted an actual suspension.

Although the violations in the present case are less extreme than those in *Finneran*, the penalty imposed in this case is less extreme than the indefinite suspension imposed in *Finneran*.

**{¶ 80}** Having considered Stafford's conduct, the applicable aggravating and mitigating factors, and the sanctions imposed for similar misconduct, we conclude that an actual 12-month suspension is the appropriate sanction for Stafford's ethical violations. Stafford's license to practice law is suspended for 12 months. Costs are taxed to Stafford.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

**O'DONNELL, J., concurring.**

**{¶ 81}** I concur with the majority in this case but write separately to address an assertion presented by respondent's counsel during oral argument regarding ex parte communications occurring in the Domestic Relations Division of the Cuyahoga County Common Pleas Court. The following colloquy occurred during oral argument regarding respondent's conduct in obtaining an ex parte order granting leave to amend a pleading in a case pending in that court:

Justice Lundberg Stratton: What about the allegations that [Stafford] continued to obtain ex parte amendments and—and— such without fully disclosing what was going on—that's one of the allegations—and certainly that might be a reason the judge doesn't complain, because the judge is signing ex parte orders.

Counsel for Stafford: And I think it's been evidenced in this case that *it is in fact something that goes on in Cuyahoga County Domestic Relations Court*. In this instance, he filed a

motion for leave. The judge signed it that day. That was the judge's decision to do or not to do. The motion to amend was not ex parte, your honor.

Justice Lundberg Stratton: So because this is a practice, it's ethical? It's allowed? It's OK?

Counsel for Stafford: I *think if both sides are engaging in it, yes*, but more importantly, several months later, Judge Celebrezze said—

Justice Lundberg Stratton: Don't you think maybe we have a duty to say, "That's it. I don't care if the judge does it or not, it's not allowable, it's not ethical, you're 'ex parte-ing,' and this is where it's stopping?" Because the judges apparently aren't stopping it, according to you?

Counsel for Stafford: I think if that's a decision this court makes, then it's certainly obviously the power of this court to do that, *but not retroactively to a litigant who is **among thousands** who do the same thing*.

(Emphasis added.)

**{¶ 82}** These statements of counsel appear to be incredible and very troubling. If true, the judges of the court must examine their practices to ensure that ex parte communications play no part in the way cases are litigated in their respective courts. Counsel who are under the mistaken impression that this is acceptable practice are on notice that such a practice subjects both the attorney and judge to potential discipline.

## Ex Parte Communications

**{¶ 83}** "An ex parte communication is one that excludes any party who is legally entitled to be present or notified of the communication and given an

opportunity to respond." Garwin, Libby, Maher, and Rendelman, *Annotated Model Code of Judicial Conduct*, 176 (2d Ed.2004). When exchanged between a judicial officer and counsel, such communications violate the right of the opposing party to receive a fair hearing, 2 Restatement of the Law 3d, The Law Governing Lawyers, Section 113, comment (b) (2011), and thus are prohibited by the Ohio Rules of Professional Conduct and the Ohio Code of Judicial Conduct.

{¶ 84} To the extent that counsel engage in unauthorized ex parte communications or judges permit or condone them, they violate these rules.

### Attorney Communications

{¶ 85} Prof.Cond.R. 3.5 prohibits an attorney from communicating ex parte with "a judicial officer or other official as to the merits of the case during the proceeding unless authorized to do so by law or court order." *See also* 2 Restatement of the Law 3d, The Law Governing Lawyers, Section 113(1) ("A lawyer may not knowingly communicate ex parte with a judicial officer before whom a proceeding is pending concerning the matter, except as authorized by law"). The comments to this section note that prohibited communications include those between counsel and judges, counsel and the judge's staff, and counsel and any other judicial officer permitted to rule on evidence or argument about a disputed matter, and ex parte communications that seek resolution of procedural matters that may result in a "substantial tactical or strategic advantage." *Id*. at comment (c).

{¶ 86} We have routinely disciplined attorneys for participating in unauthorized ex parte communications. In *Disciplinary Counsel v. Tomlan*, 118 Ohio St.3d 1, 2008-Ohio-1471, 885 N.E.2d 895, ¶ 31, we held that John Tomlan's ex parte communication with a judge that occurred away from the courthouse, in which Tomlan asked the judge his thoughts on a pending probate matter and expressed hope that the judge would decide the latest issue in his client's favor, violated DR 7-110(B) (prohibiting attorneys from communicating ex parte on the

merits of a case with a judicial officer).[1]  In *Stark Cty. Bar Assn. v. Arkow*, 104 Ohio St.3d 265, 2004-Ohio-6512, 819 N.E.2d 284, ¶ 17, we held that Seth Arkow's communication with a judge, during which he presented a proposed child-custody order for judicial action at a hearing he requested without opposing counsel present and without providing notice reflecting the correct day of the hearing, violated DR 7-110(B).  Further, in *Disciplinary Counsel v. Stuard*, 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788, ¶ 16, we held that assistant prosecutor Christopher D. Becker's ex parte communication with Judge John Stuard, in which Becker prepared a sentencing entry in a capital case without informing defense counsel, violated DR 1-102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and DR 7-110(B).  Also, in *Disciplinary Counsel v. Baumgartner*, 100 Ohio St.3d 41, 2003-Ohio-4756, 796 N.E.2d 495, ¶ 10, we held that Elsebeth Baumgartner's ex parte communication with a juvenile-court judge before whom a client's case was pending, in which she accused government officials of corruption and conspiracy and discussed the merits of a client's case, violated DR 7-110(B), *id.* at ¶ 8, 10, and in *Cincinnati Bar Assn. v. Sauter*, 96 Ohio St.3d 136, 2002-Ohio-3610, 772 N.E.2d 620, ¶ 5, 10, we held that judicial law clerk Susan M. Sauter's ex parte communication with counsel for a party in a pending case, in which she recommended a strategy on appeal, violated DR 1–102(A)(5).

### Judicial Communications

{¶ 87} Ex parte communications to judicial officers may be inaccurate or incomplete and may "undermine a judge's impartiality and the integrity of the judicial process."  33 Am. Judicature Soc. Ctr. for Judicial Ethics*, Judicial Conduct Reporter* (Spring 2011).  Jud.Cond.R. 2.9 prohibits a judge from

---

1.  The Rules of Professional Conduct superseded these Disciplinary Rules of the Code of Professional Responsibility on February 1, 2007.

initiating, receiving, permitting, or considering ex parte communications stemming from or directed to parties or their attorneys, except as follows:

(1) When circumstances require it, an ex parte communication for scheduling, administrative, or emergency purposes, that does not address substantive matters or issues on the merits, is permitted, provided the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;

(2) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives notice to the parties of the person consulted and the subject-matter of the advice solicited, and affords the parties a reasonable opportunity to object or respond to the advice received;

(3) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record and does not abrogate the responsibility personally to decide the matter;

(4) A judge, with the consent of the parties, may confer separately with the parties and their lawyers in an effort to settle matters pending before the judge;

(5) A judge may initiate, receive, permit, or consider an ex parte communication when expressly authorized by law to do so;

(6) A judge may initiate, receive, permit, or consider an ex parte communication when administering a specialized docket, provided the judge reasonably believes that no party will gain a

procedural, substantive, or tactical advantage while in the specialized docket program as a result of the ex parte communication.

{¶ 88} We have disciplined judges for participating in unauthorized ex parte communications in several instances. In *Stuard*, 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788, ¶ 10, 16, we held that Judge Stuard's ex parte communications with a prosecutor, resulting in the prosecutor's preparation of a sentencing entry in a capital case without involving defense counsel, violated Canon 2, 78 Ohio St.3d CLXVIII (requiring a judge to "respect and comply with the law and * * * act at all times in a manner that promotes public confidence in the integrity of the judiciary") and Canon 3(B)(7) (prohibiting a judge from initiating, receiving, permitting, or considering communications as to substantive matters or issues on the merits made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding).[2] In *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 20, we held that former Judge Deborah O'Neill's ex parte communications with a prosecutor following the reversal of a conviction she entered, in which she encouraged the prosecutor to file an appeal, violated Canon 3(B)(7), and in *Disciplinary Counsel v. Medley*, 104 Ohio St.3d 251, 2004-Ohio-6402, 819 N.E.2d 273, ¶ 10, 13, we held that former Judge William Medley's communications with a criminal defendant, in which the judge unilaterally negotiated and accepted a plea bargain in the absence of the prosecutor and defense counsel, violated Canon 1 (requiring a judge to uphold the integrity and independence of the judiciary), 2, 3(B)(7), and 4 (requiring a judge to avoid impropriety and the appearance of impropriety in all the judge's activities) and

---

2. These Canons were superseded by a new Code of Judicial Conduct on March 1, 2009.

DR 1-102(A)(5). More recently, in *Disciplinary Counsel v. Plough*, 126 Ohio St.3d 167, 2010-Ohio-3298, 931 N.E.2d 575, ¶ 10, we determined that former judge John Plough's communications with a county prosecutor without the participation of defense counsel, in which the judge discussed his opposition to the assistant prosecutor's proposed plea agreement, violated Canon 3(B)(7).

{¶ 89} In the instant case, disciplinary counsel did not charge respondent with a violation of the Ohio Rules of Professional Conduct in connection with an ex parte communication. What is disturbing is the cavalier attitude toward ex parte communication evidenced by counsel's colloquy with a member of this court and the incredible representation that thousands of lawyers do the same thing.

{¶ 90} The Ohio Rules of Professional Conduct and the Ohio Code of Judicial Conduct prohibit ex parte communications unless otherwise authorized by the rules. Participating in unauthorized ex parte communications is prohibited conduct subject to sanction. Our adversarial system of justice is dependent upon attorneys who respect, understand, and adhere to the Ohio Rules of Professional Conduct and upon impartial jurists who strictly adhere to the Code of Judicial Conduct and who assertively resist ex parte engagements.

{¶ 91} The statements of counsel during the oral argument of this case, if true, are troubling and raise concerns about the conduct of those engaged in the practice of law in the Cuyahoga County Domestic Relations Court. Counsel and judges are reminded of their obligation to adhere to the Ohio Rules of Professional Conduct and the Ohio Code of Judicial Conduct in this regard and to avoid the appearance of impropriety.

O'CONNOR, C.J., and LUNDBERG STRATTON, J., concur in the foregoing opinion.

_____

Jonathan E. Coughlan, Disciplinary Counsel, Lori J. Brown, Chief Assistant Disciplinary Counsel, and Karen H. Osmond, Staff Attorney, for relator.

Stephen S. Crandall, for respondent.

_____