[Cite as *In re A.E.B*, 2018-Ohio-2269.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY


IN THE MATTER OF:

A.E.B.,

DEPENDENT CHILD.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 17 JE 0030

---

Civil Appeal from the
Juvenile Court of Jefferson County, Ohio
Case No. 2017 DN 00010

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gregory J. Wysin*, 2037 Brady Lake Road, Kent, Ohio 44240 for Appellant and

*Atty. Amanda J. Abrams*, 125 S. 5th Street, Steubenville, Ohio 43952 for Appellee.

**RELEASED AND JOURNALIZED:**
**May 31, 2018**

**Robb, P.J.**

{¶1} Appellant-father appeals the decision of the Jefferson County Common Pleas Court, Juvenile Division terminating his parental rights and granting permanent custody of the child A.E.B. to Children Services. He argues the decision was against the manifest weight of the evidence based upon his allegation that the agency failed to show the absence of a relative who was able to take legal custody of the child, citing a statute pertaining to an orphaned child. For the following reasons, the trial court's decision is affirmed.

## STATEMENT OF THE CASE

{¶2} When the child was born on March 12, 2017, he tested positive for cocaine, benzodiazapene, and Subutex. The child was transferred to a hospital in Pittsburgh as he required treatment for withdrawal, which thereafter continued at a children's transitional center until his release on April 30, 2017, when he entered foster care. Upon the child's birth, the mother expressed her wish to permanently surrender her parental rights and allow the child to be placed for adoption. She received surrender counseling. No father was named on the birth certificate, and the mother said the father was unknown. The day after the child's birth, Appellant called the agency stating he may be the father of the child. He did not provide an address or phone number.

{¶3} On March 21, 2017, the agency filed a dependency complaint and sought permanent custody or in the alternative temporary custody. The same day, the court conducted a shelter care hearing and a probable cause hearing. The mother completed the permanent surrender in open court. The court found probable cause the child was dependent and granted emergency temporary custody to the agency. The agency filed a motion for paternity testing of Appellant. The adjudicatory hearing was set for April 7, 2017; Appellant was originally served by publication as his address was unknown. On March 27, 2017, Appellant appeared at the agency and signed a notice of address and phone number, which was filed with the court. At this time, Appellant was personally served with the summons, which explained how to obtain court-appointed counsel.

{¶4}  Appellant appeared unrepresented at the April 7, 2017 hearing and agreed to genetic testing, which the court ordered in a judgment entry filed the same day.  The adjudicatory hearing was continued as Appellant asked for time to obtain counsel, but he then appeared unrepresented at the May 5, 2017 rescheduled adjudicatory hearing.  An agency caseworker testified about the child's situation.  On May 9, 2017, the child was adjudicated dependent in a magistrate's decision, which found the agency made reasonable efforts to prevent placement of the child outside of the home including a search for relatives.  No objection to the magistrate's decision was filed, and the court entered judgment on the dependency adjudication on May 24, 2017.

{¶5}  Appellant presented himself at the agency for genetic testing on May 17, 2017.  However, he did not appear for the dispositional hearing two days later.  In a May 22, 2017 decision, the magistrate granted temporary custody to the agency, stating the agency's reasonable efforts included a search for relatives.  No objection was filed, and the court entered judgment on the temporary custody disposition on June 6, 2017.

{¶6}  The genetic test result (dated May 19, 2017) confirmed Appellant's paternity and was mailed to Appellant by the agency at the residence he provided in the notice of address.  The result was filed with the court, and on May 30, 2017, the court entered a paternity judgment.  The caseworker thereafter repeatedly found Appellant's phone number unreachable and repeatedly attempted to visit the address he provided.  On one visit, a person told the caseworker Appellant no longer lived there but a message would be delivered.  Appellant called the caseworker two days later and asked why she was looking for him.  (Tr. 20).  During this June 14, 2017 phone conversation, Appellant admitted he received (from his sister) the paternity result mailed to the address on file.  (Appellant's sister testified she previously lived at that address.)

{¶7}  On June 15, 2017, Appellant attended a meeting at the agency with his girlfriend, and a case plan for reunification and visitation was discussed.  When asked why he did not contact the agency after receiving the paternity result, he said he had been busy and left his phone in a friend's car.  (Tr. 21).  He was unemployed and occasionally worked for a temporary job service.  He reported he was living at his girlfriend's apartment and disclosed this was contrary to the rules of her public housing tenancy as a result of his criminal record.  (Tr. 22).  He was fingerprinted for a criminal

background check which showed he was 25 years old and had convictions for: assault (charged in 2016, 2014, and 2013); fourth-degree felony carrying a concealed weapon (charged in 2011 and 2012), the second of which resulted in him serving time in prison in 2013/2014; and fifth-degree felony receiving stolen property for which he served time in prison in 2015/2016. (Ex. D).

{¶8} During the meeting at the agency, Appellant named a clinic in Pittsburgh which he said was treating him for opiate addiction by providing him Suboxone. The agency instructed him to release his medical information from the clinic, but he never provided evidence he was being treated by this clinic. The agency also instructed him to submit to urine testing the next day in order to determine whether the Wednesday visitations would be supervised or unsupervised, but he never provided a urine test result. (Tr. 22, 36-38). At the June 15, 2017 meeting, Appellant informed the agency he did not have relatives willing to file for custody or to come speak with the agency regarding the child, but he said he was going to file a motion for custody in the juvenile court. (Tr. 27, 32). He did not do so, and he did not return to the agency.

{¶9} The caseworker unsuccessfully attempted a home visit at the girlfriend's apartment and then called the father's girlfriend on June 26, 2017. Appellant returned the call asking why she was calling him. (Tr. 22). She informed him the clinic would not release any information to the agency with a faxed release as the clinic's policy required any client to personally present the release to the clinic. When she inquired about the urine screen, Appellant claimed to have an appointment with the clinic on July 1, 2017. (Tr. 23).

{¶10} On July 3, 2017, the caseworker approached Appellant while he was at the Steubenville Municipal Court. She asked him about the July 1 urine screen, and he said the appointment was July 3; he had no response when she advised him that very day was July 3. (Tr. 24). The caseworker again asked if he had relatives willing to file for custody of the child, and he responded in the negative. (Tr. 32). The caseworker obtained a new home address from him, but she thereafter attempted to contact him at that address three times to no avail. On one of those times, a woman (whom she watched enter the house) would not answer the door. (Tr. 24). Around this time, Appellant's girlfriend told the caseworker they were no longer together. On July 24,

Case No. 17 JE 0030

2017, the caseworker sent a letter to prompt Appellant to exercise his visitation scheduled at the agency every Wednesday at 2:00 p.m., but he never exercised visitation.

{¶11} On August 18, 2017, the agency filed a motion for permanent custody. A summary was attached which stated: he did not maintain contact with the agency or show his intent to work a reunification plan; he did not provide proof of sobriety, income, or housing; he failed without justification to visit the child or complete any aspect of his case plan; he said he had no family members interested in filing for custody; he thereafter failed to name any family members that may be willing to file for custody; no suitable relatives approached the agency regarding placement of the child; and the child was presumed to be abandoned under R.C. 2151.011(C) as the father had no contact with the child for more than 90 days.

{¶12} The court appointed counsel for Appellant on August 23, 2017 and set the case for dispositional hearing on October 17, 2017. Still, Appellant and his family did not contact the agency. The child's guardian ad litem filed a report noting Appellant's lack of steps toward reunification and the child's development of a bond with the foster family. She recommended permanent custody be granted to the agency. On the day of the hearing, Appellant arrived at court with counsel and his sister who spoke to the caseworker before the hearing about the child's placement.

{¶13} The caseworker explained the child was born with an extra digit on each hand, which is a hereditary condition; a physician advised surgery should not be performed until the child was at least a year old. (Tr. 11-12). Notably, Appellant revealed (weeks prior to appearing for paternity testing) how he knew he was the father as he was born with this same condition. (Tr. 11, 40). The foster mother noted the child has had no family in his life since he was born besides herself and her husband, and she expressed they were ready and capable to be the child's mother and father. (Tr. 64). During the child's hospitalization, the foster parents regularly visited the child and checked on him via video as well. The caseworker confirmed the seven-month-old child was very bonded to his foster parents who were willing to adopt him if permanent custody was granted to the agency. (Tr. 41-42).

Case No. 17 JE 0030

{¶14} The caseworker spoke of the occurrences in the case as set forth supra and the requirements of Appellant's case plan, which included providing evidence of suitable housing, a means of support, and compliance with a drug treatment program. (Tr. 36). She noted: he never ensured his records were released from the clinic that allegedly prescribed him Suboxone; he never provided the results of a urine test; he never visited the child; and no home visit was conducted due to the inability to find him at shifting addresses. At the time of trial, there was an outstanding warrant for Appellant's arrest on two counts of fifth-degree felony theft issued out of the Steubenville Municipal Court. (Tr. 31).

{¶15} The caseworker disclosed that Appellant's mother approached an agency supervisor at a store two weeks before the hearing and mentioned she thought of looking into the child's custody but did not want to let her son "off the hook." (Tr. 32, 44-45). The caseworker explained the paternal grandmother was not someone the agency would consider for placement due to her criminal record and history with the agency. (Tr. 32-33). The paternal grandmother did not seek custody and was not present for the hearing.

{¶16} The caseworker testified about the sister who did not inquire about custody until she arrived at court just before the hearing. The local municipal court records showed the sister had a prior conviction for disorderly conduct. (Tr. 33). The sister reported living with another sister whom the caseworker knew had a substantial history with the agency. For instance, this co-resident had a prior substantiated abuse case with the agency due to a child being born addicted to cocaine and a prior neglect case with the agency which resulted in a child endangering conviction. (Tr. 33-34).

{¶17} Appellant did not testify. Appellant's sister testified she was present because: "I was informed that my brother was trying to get his son back and I will have to get custody of him." (Tr. 51). She said Appellant had been telling her "bits and pieces about it for the past couple months but I didn't know this was like the last ending of it." (Tr. 52). He told her he had to provide evidence of treatment to get his son back, and she drove him to a facility in *Steubenville* to make inquiries on treatment. (Tr. 52, 57-58). She was asked: "did you ever ask him if you could see the baby or have the baby with you?" She answered, "Not – visit, no but try to get it, yes." She estimated

she contemplated seeking custody a month before the hearing when he told her he was going to lose his rights. (Tr. 56, 62). She did not file a motion in the court or contact the agency (besides speaking to the caseworker at the court just before the hearing commenced).

{¶18} Appellant's sister lived in a rental house in Steubenville with her sister and her sister's four children ranging in ages from three to ten. She said she had experience with children as a result of her nieces and nephews. She stayed in the living room of the house which had three bedrooms. (Tr. 51). She said the subject child could stay in the bedroom with the two male children if she received custody. (Tr. 50). The sister said she filled out Section 8 paperwork and was waiting for a meeting on that subject. (Tr. 61). She was 22 years old with no children and worked full-time on the third shift of a company outside of Pittsburgh. She also said both her name and her sister's name were on a one-year lease for the rental house, and they could not leave early. (Tr. 50-51). She estimated they had lived there for six months. (Tr. 51). Other evidence suggested it may have been less as she previously lived at an address matching the one Appellant originally provided to the agency and he said he received from his sister the May 2017 paternity test result sent to that address. (Tr. 62). The sister mentioned having prior theft cases in addition to her disorderly conduct conviction. (Tr. 61).

{¶19} On October 19, 2017, the magistrate's decision found by clear and convincing evidence that Appellant's parental rights should be terminated, permanent custody should be granted to the agency, and this was in the child's best interest. The magistrate recited: the father had no contact with the child and failed to appear for weekly visits; he failed to comply with the case plan without justification; he failed to complete or provide evidence of drug counseling, submit urine test results, or collect records from the clinic; his living conditions could not be determined due to his lack of contact with the agency; he had a criminal history involving assaults and weapons; and he had two felony theft charges pending with a warrant out for his arrest.

{¶20} The magistrate concluded: the father abandoned the child by not visiting for more than 90 days; he demonstrated a lack of commitment by failing to support, visit, or communicate with the child when able to do so or by other actions showing an

unwillingness to provide an adequate permanent home for the child; the agency made reasonable efforts to reunite the child with his father and engaged in reasonable case planning and diligent efforts to assist the father in remedying any issues, which he continuously and repeatedly failed to remedy. Regarding relatives, the magistrate stated: no relatives were identified by the father prior to the day of the hearing; the sister knew of the child's existence for months but took no steps to visit or contact the agency; and his sister would not be an appropriate placement as she resides with her sister who has substantiated abuse and neglect cases. As to the child, the magistrate found: the child was in need of legally secure permanent placement which could not be accomplished without granting permanent custody to the agency; the foster parents visited the child in the hospital to bond with the child; and the child has been integrated into the home of the foster parents who were interested in adopting the child.

{¶21} The father filed a timely objection to the magistrate's decision. The objection provided: "The father asserts that the agency could not show that no relative was able to take legal custody of the child." The transcript of the magistrate's hearing was prepared for the trial court's review. On December 1, 2017, the trial court overruled the objection, adopted and incorporated the magistrate's decision which was restated in its entirety, and entered judgment granting permanent custody to the agency and terminating the father's parental rights. The father filed a timely notice of appeal. New counsel was appointed for the father on appeal. This expedited appeal was submitted for decision on May 3, 2018, when briefing closed ten days after the agency's brief was filed. *See* App.R. 11.2(C)(4); App.R. 18(A).

ASSIGNMENT OF ERROR: RELATIVE DESIRING CUSTODY

{¶22} Appellant's assignment of error contends:

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT NO RELATIVE WAS ABLE TO TAKE LEGAL CUSTODY OF THE CHILD, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶23} The father contends the court abused its discretion on the matter of whether a relative could have taken legal custody. The court may grant permanent custody to the movant if it finds by clear and convincing evidence it is in the best interest of the child and any of the following apply: (1) the child cannot be placed with either

parent within a reasonable time or should not be so placed; (2) the child is abandoned; (3) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (4) the child has been in the temporary custody of an agency for 12 or more months of a consecutive 22 month period; or (5) a child in the custody of the parents (from whom custody of the subject child was removed) was adjudicated abused, neglected, or dependent three separate times. R.C. 2151.414(B)(1)(a)-(e). Pursuant to R.C. 2151.011(C), "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

{¶24} "Clear and convincing evidence" is a measure of proof that will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990), citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). It is an intermediate measure or degree of proof which is more than a mere "preponderance of the evidence" but less than the certainty required where the burden of proof is "beyond a reasonable doubt" as in criminal cases. *Id.* "Clear and convincing" does not mean "clear and unequivocal." *Disciplinary Counsel v. Stafford*, 131 Ohio St.3d 385, 2012-Ohio-909, 965 N.E.2d 971, ¶ 21; *Cross*, 161 Ohio St. at 477.

{¶25} The juvenile court's decision on a motion for permanent custody is subject to an abuse of discretion review. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 48. An abuse of discretion occurs if the court's decision is unreasonable, arbitrary or unconscionable; it entails more than an error of judgment. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). A decision is unreasonable if it is unsupportable by any sound reasoning process. See *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). A decision is not unreasonable merely because a reviewing court would have made a different decision if in the trial court's place. The appellate court is not free to merely substitute its judgment for that of the trial court. *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). We are guided by a presumption the trial court's findings are correct since the trial court judge is best able to judge credibility of witnesses and

occupies the best position for weighing the evidence. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶26}** Appellant does not contest the best interest finding or the finding that he abandoned the child. Rather, he contends the agency made no effort to identify paternal relatives. Appellant notes the foster parents desired to adopt the child the moment they heard of the mother's surrender, and he believes the agency never intended to make a good faith effort to determine if he had relatives who could take custody. As the mother already permanently surrendered her parental rights, it is suggested the child became "orphaned" upon the father's abandonment. Appellant relies on division (B) of R.C. 2151.413, which provides an agency who, under R.C. 2151.353(A)(2), "is granted temporary custody of a child who is orphaned may file a motion in the court that made the disposition of the child requesting permanent custody of the child whenever it can show that no relative of the child is able to take legal custody of the child." R.C. 2151.413(B).[1]

**{¶27}** Here, the child was found to be abandoned, not orphaned. Although the most common use of the word "orphan" means one whose parents are dead, Appellant uses an alternative definition which includes a person who has lost his parents or who is generally without parental care. *See Black's Law Dictionary* (10th ed.2014). In any case, the pertinent statutory provisions discussed herein differentiate between "orphaned" and "abandoned."

**{¶28}** It seems Appellant relies on division (B) of R.C. 2151.413 (applicable to an orphaned child) because division (A) does not require a showing that "no relative of the child is able to take legal custody" and provides that an agency who under R.C. 2151.353(A)(2) "is granted temporary custody of a child who is *not abandoned* or orphaned" may file a permanent custody motion. R.C. 2151.413(A) (emphasis added). The agency was granted temporary custody under R.C. 2151.353(A)(2) which provides: "if a child is adjudicated an abused, neglected, or dependent child, the court may * * * Commit the child to the temporary custody of * * * a public children services agency."

---

[1] Even when the former version of this statutory division also contained a provision for an abandoned child, the language on relatives only applied to the orphaned child. *See* 1998 HB 484 amendment to R.C. 2151.413(B).

The dispositional hearing on temporary custody occurred *before* there arose a presumption of abandonment by the father.

**{¶29}** In any event, another statute provides: "If after making disposition as authorized by division (A)(2) of this section, a motion is filed that requests permanent custody of the child, the court may grant permanent custody of the child to the movant in accordance with section 2151.414 of the Revised Code." R.C. 2151.353(C).[2] The statutory findings for granting permanent custody in (a) through (e) of R.C. 2151.414(B)(1) are alternatives so that only one of the five options must be found by the court. *In re C.F.*, 113 Ohio St.3d 73 at ¶ 23-27.

**{¶30}** As aforementioned, R.C. 2151.414(B)(1) states the court may grant permanent custody to the agency if it finds by clear and convincing evidence it is in the best interest of the child and *one* of the following apply: (1) the child cannot be placed with either of the parents within a reasonable time or should not be so placed[3] (and the child is not abandoned, orphaned, or in temporary custody for "12 of 22" months); (2) *the child is abandoned*; (3) *the child is orphaned, and there are no relatives of the child who are able to take permanent custody*; (4) the "12 of 22" provision applies; or (5) certain prior adjudications exist. R.C. 2151.414(B)(1)(a)-(e). These are separate options. The option involving an abandoned child does not refer to whether there are relatives of the child who are able to take permanent custody as does the provision regarding a child who was orphaned.

**{¶31}** In any event, *Appellant twice expressly told the agency he had no relatives willing to seek custody*. He is the only party on appeal. A party who twice tells an agency he has no relatives who could take custody cannot then argue the agency failed to investigate the status of his own relatives where no relatives approached the agency prior to the hearing. We also note Appellant's mother considered his situation but voiced she did not want to let her son "off the hook" and apparently decided against

---

[2] *See also* R.C. 2151.415(A)(4) (motion for termination of parental rights to be filed at least 30 days before temporary custody expires), (F) (a motion for a dispositional order can be filed by the agency, the court, the guardian ad litem, or a party).

[3] The court also made specific findings in R.C. 2151.414(E)(1), (4), and (10), which require a conclusion that the child cannot be placed with either parent within a reasonable time or should not be so placed.

seeking custody as she did not do so. Furthermore, she was judged by the agency to be an unsuitable placement due to a criminal history and her history with the agency. Regardless, she was not at the hearing, and it is his sister Appellant asks this court to consider.

**{¶32}** Appellant contends the court abused its discretion by not giving his sister the opportunity to demonstrate she would be a suitable placement, pointing out there was still time on the one-year temporary custody clock. First, we note Appellant's sister's statement as to why she was there suggested she wished to help her brother "get his son back." This may indicate she would have been asking for temporary custody, rather than legal custody. The statutes cited by Appellant refer to a relative who can take permanent legal custody. *See* R.C. 2151.413(B) (speaking of a relative who can take "legal custody" of orphaned child); R.C. 2151.414(B)(1)(c) (speaking of a relative who can take "permanent custody" of orphaned child).[4] The juvenile court could rationally conclude it was not convinced she was not offering the child the legally secure permanent placement that he needed. *See* R.C. 2151.414(D)(1)(d) (a best interest factor for the court to weigh in its discretion).

**{¶33}** Moreover, Appellant's sister did not file a motion seeking custody and did not voice to the agency a desire to seek custody until just prior to the commencement of the hearing even though she knew about the child's birth for months and knew for a month that Appellant believed he would lose his parental rights. In addition, Appellant's sister did not contact the agency to inquire as to visitation or the child's well-being at any time. The juvenile court found her last-minute expression of interest significant. The sister also gave no indication of who would take care of the child while she worked the third shift at a company in Pittsburgh. Appellant had not completed the requirements for unsupervised visitation, and he showed himself to be unreliable when it came to involving himself in the child's life. Furthermore, the court concluded

---

[4] *See also* R.C. 2151.42(B) (legal custody intended to be permanent in nature, including that granted under R.C. 2151.415). We also note, under the statute governing the initial disposition, a person must file motion for legal custody prior to the dispositional hearing or be identified in a party's motion prior to the hearing; in the latter case they must sign a statement of understanding that they assume legal responsibility for the child until the child reaches the age of majority or longer if the child is still in high school). R.C. 2151.353 (A)(3).

Case No. 17 JE 0030

Appellant's sister was not an appropriate placement because she lived with her sister who was not considered an appropriate co-resident for the child due to her past history with the agency and a child endangering conviction as discussed supra.

**{¶34}** The court heard Appellant's sister testify and could evaluate the sincerity of her wish to obtain custody, the credibility of her statements at the hearing, and the weight of the evidence on her ability to take custody. It is not for this court to substitute our judgment for that of the juvenile court on these factual matters. For all of the foregoing reasons, Appellant's argument as to whether a relative could have taken custody is without merit, and his assignment of error is therefore overruled.

**{¶35}** In accordance, the juvenile court's judgment is affirmed.


Donofrio, J., concurs.
Bartlett, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, Juvenile Division is affirmed.  Costs waived.